Richard ZEID and Siom Misrahi, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

John A. KIMBERLEY, et al., Defendants.

Civil No. 96–20136 SW.

United States District Court, N.D. California.

June 6, 1996.

Shirli Fabbri Weiss of Gray, Cary, Ware & Freidenrich, San Diego, CA, for defendants.

William S. Lerach of Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, for plaintiffs.

## ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND

SPENCER WILLIAMS, District Judge.

Plaintiffs Richard Zeid and Siom Misrahi initiated this action against John A. Kimberley, Frank M. Richardson, Mark A. Rowlinson and Firefox Communications, Inc. alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Securities Act") and Securities Exchange Commission ("SEC") Rule 10b–5. Defendants then filed a motion to dismiss pursuant to Section 21D(b)(3)(A) of the Securities Act and Fed.R.Civ.P. 9(b) and 12(b)(6). For the reasons set forth below, the Court DISMISSES PLAINTIFF'S CLAIMS WITH LEAVE TO AMEND.[1]

### I. BACKGROUND

Defendant Firefox Communications, Inc. ("Firefox"), which was formed in England in 1989, develops, markets and supports software that allows users of local area networks to communicate with users on other networks, including the Internet. Defendants Kimberley, Richardson, and Rowlinson are officers and directors of Firefox.

In 1994, Firefox decided to significantly expand its sales and marketing efforts in the United States and the United Kingdom. Firefox also decided to conduct a public offering to generate the necessary capital to accomplish the expansion. On May 15, 1995, Firefox went public selling 2.3 million shares at $18 a share. That day, Firefox's stock rose to $29½. The stock reached $30 per share by late May but then started to decline, falling to $21¾ per share by July 19. On July 20, Firefox released its results for the quarter ended June 30, 1995. Despite positive results, Firefox's stock continued to slide falling to $17 per share on August 3. During the remaining months of 1995 Firefox's stock remained volatile, ranging from $17 to $28⅝ per share. Then, on January 3,

1996, Firefox announced that it expected a loss for its fourth quarter. That day, Firefox's stock plummeted from $22⅝ to $10¼. On January 17, 1996, Firefox merged with FTP Software Inc. Under the terms of the merger, Firefox shareholders received one share of stock in the merged company for each share of Firefox stock.

Plaintiffs filed this action on February 23, 1996. The Complaint alleges that, during the period of August 3, 1995 to January 2, 1996, Defendants conducted a fraudulent scheme and course of business so that they could sell the company at a higher price. In particular, Plaintiffs contend that Defendants misrepresented to the investment community that Firefox was enjoying strong demand for its products and a successful expansion of its sales and marketing program in the U.S. Additionally, Plaintiffs assert that Defendants violated SEC rules and generally accepted accounting principles ("GAAP") by improperly recognizing certain revenues and by failing to keep adequate reserves. Lastly, Plaintiffs allege that Firefox released false and misleading boilerplate warnings and disclaimers during the class period. According to the Complaint, this misconduct created an inflated stock price and resulted in the collapse of Firefox's stock when the fourth quarter loss was revealed on January 3, 1996.

### II. PLEADING REQUIREMENTS FOR SECURITIES FRAUD

Under the liberal federal pleading policies, a plaintiff need only give defendant fair notice of the claims against it. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A claim should not be dismissed unless it is certain that the law would not permit the requested relief even if all of the allegations in the complaint were proven true. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). Therefore, for purposes of this motion to dismiss, the Court assumes the truth of all factual allegations in the complaint as well as all reasonable inferences drawn from them.

---

1. Defendants also moved to strike certain portions of the Complaint. Since the Court dismisses the Complaint in its entirety this motion is moot.

■ In complaints alleging fraud, however, the heightened pleading standards of Fed.R.Civ.P. 9(b) apply. This rule requires averments of fraud or inequitable conduct to be "stated with particularity." Fed.R.Civ.P. 9(b). Merely making general conclusory allegations of fraud, and then reciting a list of neutral facts, is not sufficient. *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985).

The Ninth Circuit clarified the scope of Rule 9(b) pleading requirements as applied to securities fraud actions in the case of *In re GlenFed, Inc. Securities Litigation,* 42 F.3d 1541 (9th Cir.1994) (en banc). According to *GlenFed,* a plaintiff does not state a claim for securities fraud merely by asserting that a company's revelation of bad news means that "earlier, cheerier" statements must have been false. *Id.* at 1548. Rather, the plaintiff must plead the specific circumstances of the alleged fraud, including the time, place, and nature of the statements made, and also facts demonstrating how the statements were false or misleading. *Id.* The *GlenFed* court further suggested that the most direct way to prove that representations were false when made is to point to inconsistent contemporaneous statements or omissions which contradict the challenged statements. *Id.* at 1549.

Recently, Congress enacted the Private Securities Litigation Reform Act of 1995 ("Reform Act"), Pub.L. 104–67, which amended the Securities Exchange Act of 1934. In an effort to curtail the filing of abusive lawsuits Congress included in the Reform Act a section that establishes a uniform pleading standard. S.Rep. No. 98, 104th Cong., 1st Sess., 15 (1995), U.S.Code Cong. & Admin.News at 679, 694. This section, which adopts a standard modelled after the Second Circuit's stringent pleading standard, provides:

REQUIREMENTS FOR SECURITIES FRAUD ACTIONS.—

(1) MISLEADING STATEMENTS AND OMISSIONS.—In any private action arising under this title in which the plaintiff alleges that the defendant—

(A) made an untrue statement of material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) REQUIRED STATE OF MIND.—In any private action arising under this title in which the plaintiff may recover money damages only on proof that defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

(3) MOTION TO DISMISS; STAY OF DISCOVERY.—

(A) Dismissal for Failure to Meet pleading Requirements.—In any action arising under this title, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met.

Pub.L. 104–67, 109 Stat. 746–747. Thus, in asserting a claim for securities fraud, the Reform Act requires that plaintiffs specify in the complaint: (1) each false or misleading statement, (2) why each statement is false or misleading [2] and (3) particular facts that give rise to a strong inference that defendant acted with the required state of mind. Further, if the complaint does not meet these requirements, the Reform Act mandates dismissal.

### III. ANALYSIS

As discussed in detail below, the Complaint does not satisfy the pleading requirements necessary to maintain an action under Securities Exchange Act § 10(b) or Rule 10b–5. As such, the claims for controlling person

---

**2.** Further, if an allegation regarding the statement or omission is made on information and belief, the complaint must state with particularity the facts on which the belief is formed.

liability pursuant to § 20(a) of the Securities Exchange Act are also deficient.

### A. *Misleading Statements and Omissions*

In analyzing a securities fraud complaint a trial court must initially determine whether the complaint sufficiently identifies each false or misleading statement and adequately specifies why each statement is false or misleading. Here, the allegedly false and misleading statements can be divided into four general categories: (1) false and misleading analysts' reports, (2) false and misleading company statements, (3) false financial statements, and (4) false and misleading boilerplate warnings and disclaimers.

### 1) *False and Misleading Analysts' Reports*

■ Plaintiffs assert that during the class period, August 3, 1995 to January 2, 1996, Firefox's insiders told analysts that Firefox's sales and marketing expansion programs had succeeded and that Firefox would achieve strong revenue and earnings growth in the second half of 1995 and during 1996. Complaint ¶¶ 42, 43, 45. These allegations of false and misleading analysts' report statements are insufficient for several reasons.

First, the allegations fail to properly identify each statement alleged to be misleading. In setting forth the allegedly false or misleading analysts' report statements, the Complaint states that on August 3, August 22, and October 24 of 1995, "Firefox's top executives (Kimberley and/or Richardson and Rowlinson) communicated with" the analysts and told the analysts or guided them to forecast false and misleading statements. Complaint ¶¶ 42, 43, 45. Further, the Complaint provides that the analysts then "reported this information to the market where it became part of the total mix of information affecting Firefox's stock price." Complaint ¶¶ 42, 43, 45. The Complaint does not, however, specify when or how the analysts reported the information to the market. Since the Complaint does not contain this essential information, it does not adequately identify each statement as required by Rule 9(b) and the Reform Act.

■ Second, Plaintiffs failed to plead adoption of the analysts' statements with a sufficient degree of specificity to satisfy Rule 9(b). In general, a company may be liable for analysts' forecasts if it expressly or impliedly represented that the information in the forecasts was accurate or coincided with the company's views. *In re Syntex Corp. Securities Litigation*, 855 F.Supp. 1086, 1097 (N.D.Cal.1994). To sufficiently plead adoption of analysts' statements, a plaintiff must: 1) identify specific analysts' forecasts and name the insider who adopted them; 2) point to specific interactions between the insider and the analyst which gave rise to entanglement, and; 3) state when these interactions occurred. *Syntex*, 855 F.Supp. at 1097; *In re Caere Securities Litigation*, 837 F.Supp. 1054, 1059 (N.D.Cal.1993). Furthermore, entanglement requires a two-way flow of information. *Syntex*, 855 F.Supp. at 1097. The plaintiff must allege that the insider provided misleading information to an analyst, that the analyst relied on this information in preparing a report, and that the insider somehow endorsed or approved the report prior to or after its publication. *Id.*

Here, Plaintiffs assert that Firefox executives "told" analysts the misleading information. Complaint ¶¶ 42, 43, 45. However, as previously stated, the Plaintiffs do not even identify the analysts' reports. Further, the Complaint fails to assert adoption of the analyst report statements or allege specific interactions that would give rise to entanglement.

Plaintiffs do not dispute that the Complaint fails to sufficiently allege adoption by insiders. Instead, Plaintiffs contend that recent Ninth circuit cases have eliminated the adoption requirement. To support their argument Plaintiffs cite to *Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir.1996), and *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1422, 134 L.Ed.2d 547 (1996). However, *Xoma* and *Fecht* merely provide that a cause of action can be based on statements contained in analyst reports. These cases do not stand for the proposition that plaintiffs can maintain a securities fraud action based on allegedly misleading analysts' reports without alleging that the reports were adopted by company insiders. In fact, neither *Xoma*

nor *Fecht* mention *Syntex* or *Caere* or discuss the requirement of pleading adoption of analysts' report statements in securities fraud cases. Thus, Plaintiffs' attempt to avoid pleading adoption of analysts' report statements is unavailing.

Third and finally, Plaintiffs have not sufficiently alleged the reason or reasons why the statements in the analysts' reports are misleading. Plaintiffs allege that during the class period Defendants knew and failed to disclose that Firefox's "sales and marketing expansion plan was failing," that Firefox's sales force "was functioning very poorly," that the "demand for Firefox products was weak," and that Firefox could not "meet the revenue and earnings forecasts." Complaint ¶¶ 12, 56. These conclusory allegations are insufficient to support a claim of fraud. The Complaint is devoid of any contemporaneous facts which tend to show that the allegedly misleading statements were false when made. For example, Plaintiffs do not allege any contemporaneous inconsistent statements or the existence of any information which would indicate that Firefox's sales, demand and overall business were rapidly declining when the allegedly misleading statements were made. Instead, Plaintiffs apparently base their allegations on hindsight. However, Plaintiffs cannot rely upon the sobering revelations announced on January 3, 1996, to prove that Firefox's "earlier, cheerier" statements were false. *GlenFed,* 42 F.3d at 1548.

### 2) *False and Misleading Company Statements*

Plaintiffs allege that on three separate occasions during the class period Firefox executives released misleading statements. The first occasion was on September 20, 1995 at the Montgomery Securities 25th Annual Investment Conference where Firefox executives allegedly told assembled analysts that Firefox was in a competitive position, performing well, and on track for strong third an fourth quarter earnings. Complaint ¶ 44. The second alleged misleading statement occurred on October 24, 1996, when Firefox

reported strong increases in revenue and earnings due to continued expansion. Complaint ¶ 45. The third company release happened on December 11, 1995, at the 13th Annual Montgomery Technology Conference where Firefox executives allegedly told analysts and investors that business and demand were strong.[3] Complaint ¶ 49.

■ As with the analyst reports, the allegations regarding these company statements are clearly insufficient under Fed.R.Civ.P. 9(b) and the Reform Act. As for the conferences, Plaintiffs allege that Firefox executives told analysts and institutional investors the misleading information. However, once again, Plaintiffs fail to allege how or when this information was relayed to the market.

■ Furthermore, Plaintiffs fail to specify the reason or reasons why any of the company statements were misleading when made. Broad, conclusory allegations that Firefox's expansion was failing, the sales force was functioning poorly, and demand was weak do not explain why the company's statements were false or misleading when made. Moreover, without contemporaneous facts, the only possible basis for Plaintiffs assertions is Firefox's disclosure in January of 1996. As such, Plaintiffs allegations of false and misleading company statements amount to no more than "fraud by hindsight," and are therefore, insufficient under Rule 9(b). *GlenFed,* 42 F.3d at 1548; *Denny v. Barber,* 576 F.2d 465, 470 (2nd Cir.1978); *Stack v. Lobo,* 1995 WL 241448, *3, 1995 U.S.Dist LEXIS 19966, *7 (N.D.Cal.1995).

### 3) *False Financial Statements*

■ Plaintiffs also allege that in order to materially overstate revenue and earnings for the third quarter of 1995, Firefox violated GAAP and SEC rules by improperly recognizing revenue for sales which were contingent on resale. Complaint ¶ 59. To buttress this allegation Plaintiffs assert that Firefox was "parking" (recognizing revenue without requiring the distributor to pay for the goods) inventory at distributors. Complaint

---

**3.** The Complaint also discusses news releases regarding a "strategic alliance" between Firefox and FTP Software. However, Plaintiffs do not allege that anything in these news releases was false or misleading.

¶ 67. Additionally, Plaintiffs contend that Firefox was extending credit under liberal terms without deferring revenue. Complaint ¶ 67.

Again, Plaintiffs' allegations fail for lack of particularity. The Complaint does not name a single customer or sale where Firefox "parked" its inventory or prematurely recognized revenue. *See Stack v. Lobo,* 1995 WL 241448, \*5, 1995 U.S.Dist. LEXIS 19966, \*14; *In Re Wall Data Securities Litigation,* 1995 U.S.Dist. LEXIS 19812, \*11–20. Additionally, the Complaint fails to identify "any contemporaneous facts or statements which suggest that Defendants were engaging in premature recognition of revenue." *Stack,* 1995 WL 241448, \*5, 1995 U.S.Dist. LEXIS 19966 at \*14. As such, Plaintiffs' allegations that Defendants improperly recognized revenue are too conclusory to satisfy Rule 9(b).

■ Plaintiffs also allege that Firefox's risk of bad debts increased as well as its time for collecting receivables, yet Firefox failed to set aside adequate reserves for doubtful accounts. Complaint ¶¶ 69 & 70. Further, Plaintiffs state that Firefox's reserves were much lower than competitors despite high receivables. Complaint ¶ 70. Unlike Plaintiffs' other allegations, these assertions meet the particularity requirements of Rule 9(b).

Plaintiffs allege that Firefox ended its factoring arrangement which increased its risk of bad debt. Complaint ¶ 67. Plaintiffs also assert that Firefox's days' sales outstanding (DSO) increased from 102 days to 152 days. Complaint ¶ 68. Additionally, the Complaint provides that competitors, who had lower DSOs, maintained reserves of 4% of gross receivables while Firefox's allowance for doubtful accounts represented less than ½ of one percent of its gross receivables. Complaint ¶ 70. Accepting these allegations as true, the Complaint sufficiently identifies Defendants allegedly misleading conduct and how it was improper.

However, as explained below, this claim fails, along with Plaintiffs' others claims, because the Complaint does not provide facts that give rise to a strong inference that the Defendants acted with the required state of mind. In other words, even assuming Defendants acted improperly in failing to keep adequate reserves, Plaintiffs have not set forth sufficient facts to allow for a strong inference that Defendants' actions were intentional or reckless.

#### 4) *False and Misleading Boilerplate Warnings and Disclaimers*

■ Plaintiffs also allege that Firefox released misleading warnings and disclaimers when it filed reports with its Form 10–Qs. Complaint ¶ 73. These allegations do not and cannot form the basis for a claim pursuant to § 10(b) or Rule 10b–5.

Firefox's reports stated that its financial results may vary significantly due to several factors. The reports also stated that due to its sales with large customers significant fluctuations can arise from the cancellation of a small number of orders. Further, the reports contained warnings regarding Firefox's volume of sales at the end of each quarter, its inability to adjust spending in a timely manner and the possibility of reduced prices.

According to Plaintiffs, these warnings were nothing but generic statements and the reports should have contained specific disclosures of the adverse factors which were then negatively impacting Firefox's business. In other words, Plaintiffs argue that Firefox should not have stated that certain adverse factors *may* effect the financial statements, but rather it should have said they *are* effecting Firefox's business.

Plaintiffs' argument is absurd. Defendants' warnings regarding potential adverse factors are not actionable as a matter of law. Plaintiffs do not assert that any of the warnings were without basis or wrong. Instead, Plaintiffs assert that the warnings should have been more specific. Section 10(b) and Rule 10b–5 are designed to protect against false and misleading statements, not statements that are too abstract. Thus, Plaintiffs' claims that Firefox's warning and disclaimers were false and misleading are DISMISSED WITH PREJUDICE.

#### B. Required State of Mind

■ Scienter is a necessary element of every 10b–5 claim. *In re Time Warner Inc. Securities Litigation,* 9 F.3d 259, 268 (2nd

Cir.1993), *cert. denied sub nom.* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994). Further, the Reform Act requires that securities fraud complaints, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Pub.L. 104–67, 109 Stat. 746–747.

■ There are two distinct ways in which a plaintiff may plead scienter without direct knowledge of Defendant's state of mind. First, a plaintiff can allege "facts constituting circumstantial evidence of either reckless or conscious behavior." *In re Time Warner,* 9 F.3d at 269. Second, a plaintiff can allege facts "establishing a motive to commit fraud and an opportunity to do so." *Id.*

■ Here, the Complaint falls short under either approach. The Complaint does not include "facts constituting circumstantial evidence of either reckless or conscious behavior." As previously stated, Plaintiffs do not sufficiently specify any reasons why Defendants' statements were misleading when they were made. Further, Plaintiffs do not set forth any contemporaneous facts to support their assertions of knowledge and recklessness. Instead, Plaintiffs rely on Firefox's subsequent disclosure to create an inference that Defendants deliberately deceived the public. However, "misguided optimism is not a cause of action, and does not support an inference of fraud." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2nd Cir.1994).

■ As for motive and opportunity, Plaintiffs allege that Defendants conducted a fraudulent scheme so that they could bring about a high acquisition price for Firefox. In other words, Plaintiffs assert that Defendants knew Firefox was encountering difficulties, but they tried to conceal the company's mismanagement so that they would receive more for the stock they owned. The problem with Plaintiffs' theory is that the merger did not take place until after Firefox's stock price plummeted. Thus, even if Firefox's stock price was inflated, Defendants did not benefit from it.

Plaintiffs attempt to overcome this fact by generally alleging that Firefox attempted to arrange the acquisition before the disclosure on January 3, 1996. Complaint ¶ 10. However, in alleging scienter, a plaintiff cannot base its claims on conclusory allegations, but instead, must provide an ample factual basis to support their charges. *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2nd Cir.1991). Here, Plaintiffs do not allege any facts to support the proposition that Defendants intended to complete the acquisition before revealing Firefox's fourth quarter results. Thus, pursuant to the Reform Act, the Court DISMISSES the Complaint because it fails to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 109 Stat. 746–747.

## C. Dismissal Pursuant to The Reform Act

Defendants contend that since the Complaint fails to satisfy the pleading requirements of the Reform Act, it should be dismissed without leave to amend. Defendants argue that the language of the Reform Act and its legislative history compel such a result. Defendants' argument is unpersuasive.

■ Section 21D(b)(3)(A) of the Reform Act provides that "[i]n any action arising under this title, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met." Contrary to Defendants' assertions, there is nothing in this language to indicate that district courts are required to dismiss securities fraud claims without leave to amend. Further, without a clear directive from Congress, this Court refuses to read into the Reform Act any limitation on the ability of trial courts to permit an opportunity to amend.

## IV. CONCLUSION

Plaintiffs' claims based on the allegedly false and misleading analysts' reports, company statements, and financial statements are DISMISSED WITH LEAVE TO AMEND. Plaintiffs' claims based on the allegedly false and misleading boilerplate warnings and disclaimers are DISMISSED WITH PREJUDICE. Further, Plaintiffs

shall have until July 5, 1996, to amend their Complaint.

IT IS SO ORDERED.