Stanley ZUCKERMAN, et al., Plaintiffs,

v.

FOXMEYER HEALTH CORP.,
et al., Defendants.

No. 3:96–CV–2258–T.

United States District Court,
N.D. Texas,
Dallas Division.

March 31, 1998.

Jerome M. Congress, Ralph M. Stone, Samuel H. Rudman, Keith M. Fleischman, James P. Bonner, Joshua H. Vinik, Kim E. Miller, Milberg Weiss Bershad Hynes & Lerach, New York City, Frank Edward Goodrich, S. Ann Saucer, Silber & Pearlman, Dallas, TX, Marian P. Rosner, Chet B. Waldman, Wolf Popper, New York City, Emery Lawrence Vincent, Law Office of Lawrence Vincent, Dallas, TX, Roger Farrell Claxton, Robert James Hill, Kilgore & Kilgore, Dallas, TX, William Kelly Puls, Puls & Chambers, Fort Worth, TX, Stanley R. Wolfe, Karen Orman, Berger & Montague, Philadelphia, PA, for Plaintiffs.

Irwin H. Warren, Weil Gotshal & Manges, New York City, T. Ray Guy, Janice L. Mock, Weil Gotshal & Manges, Dallas, TX, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

MALONEY, District Judge.

Before the Court is Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint, filed on June 20, 1997. The motion is opposed. After consideration, the Court is of the opinion that the motion should be denied.

This is a securities fraud class action brought pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78t, as amended by the Private Securities Litigation Reform Act of 1995 (the PSLRA).[1] Named plaintiffs and proposed class members invested in the stock of Defendant FoxMeyer Health Corporation and now sue to recover for stock value losses they suffered because of Defendants' alleged fraud on the market. Defendants argue for dismissal of the complaint for failure to state a claim and failure to plead fraud with particularity.

1. Plaintiffs bring claims under state law as well.

## Background

Because this is a motion to dismiss, and therefore the truth of the allegations in the complaint is assumed, the Court adopts Plaintiffs' allegations for purposes of determining this motion. Plaintiffs are purchasers of Defendant FoxMeyer Health Corporation (FHC) common and preferred stock between July 19, 1995, and August 27, 1996 (the class period). Defendant FHC is a multi-billion dollar holding company. FHC's subsidiary, FoxMeyer Corporation (FoxCorp), in turn owns a subsidiary known as FoxMeyer Drug Company (FoxDrug), formerly the fourth largest drug distribution business in the United States. The other defendants, (collectively, the individual defendants), are Abbey J. Butler and Melvyn J. Estrin, FHC's Co–Chairmen of the Board and Co–Chief Executive Officers; Peter B. McKee, FHC's Senior Vice President and the Chief Financial Officer until May 8, 1996; Thomas L. Anderson, FHC's President and Chief Operating Officer until February 1, 1996; and Edward L. Massman, FHC's Vice President and Controller until May 8, 1996, when he was promoted to Chief Financial Officer.

Plaintiffs' claim, essentially, is that Defendants made materially false statements and omissions to the public and its shareholders about FHC and its subsidiaries and thereby fraudulently inflated the market price of FHC stock for personal gain. Many of these statements and omissions concern FHC's drug subsidiary, FoxDrug, and its efforts—which were extremely costly—to bring a new, automated drug distribution center online in July of 1995. This distribution center, and the software designed to run it, proved unable to handle the high volume of business funnelled to it, causing enormous cost overruns that the company might not otherwise have faced. Other materially false statements concern FoxDrug's distribution contracts with customers, which Defendants touted as beneficial for the company but which could not possibly be profitable because FoxDrug had underbid in securing those distribution agreements. Defendants' misrepresentations to its shareholders and

the public about these issues and the overall health of the company inflated the price of FHC's stock and constituted fraud on the market.

Ultimately, FoxCorp, owner of FoxDrug, filed for bankruptcy on August 27, 1996, which marks the last day of the class period at issue here. During the class period, FHC's common stock fell from a high of $28.125 per share to $3.750 per share on the last day of the class period. During the same period, the price of FHC's preferred stock fell from a high of $38.25 to $16.81 per share on the last day of the class period.

### Legal Standards

A motion under rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of claims stated in the complaint and must be evaluated solely on the basis of the pleadings. *Jackson v. Procunier,* 789 F.2d 307 (5th Cir.1986). The court must decide whether the material facts alleged would entitle a plaintiff to offer evidence regarding the legal remedy it requests. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Unless the answer is unequivocally no, the motion must be denied. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The United States Court of Appeals for the Fifth Circuit has established two primary considerations for a court's analysis of the propriety of dismissal under rule 12(b)(6). First, the court must accept as true all well pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). However, the court will not accept conclusory allegations in the complaint as true. Id. Second, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Id.*

Plaintiffs bring a claim pursuant to section 10(b) of the Securities Exchange Act (the Act). Section 10(b) makes it unlawful for any person to do the following:

To use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission [the SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The SEC rule at issue in this suit, known as rule 10b–5, states:

It shall be unlawful for any person, directly or indirectly, ...

...

[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ...

...

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (emphasis added).

To state a claim under section 10b, a plaintiff must allege: (1) a misrepresentation or omission; (2) of a material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury. *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir.1997); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994); *Cyrak v. Lemon,* 919 F.2d 320, 325 (5th Cir.1990). If, as here, a plaintiff alleges the theory of fraud on the market, he need not prove individual reliance on the misleading statement, but is entitled to the "presumption that he has indirectly relied on the alleged misstatement, by relying on the integrity of the stock price established by the market." *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113–14 (9th Cir.1989); *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1120 (5th Cir.1988), *rev'd on other grounds sub nom., Fryar v. Abell,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989).

A plaintiff alleging a section 10(b) violation must also satisfy the strict pleading requirements for fraud set out in Fed. R.Civ.P. 9. *See Oppenheimer v. Prudential Sec. Inc.,* 94 F.3d 189, 195 (5th Cir.1996);

*Tuchman,* 14 F.3d at 1067. Rule 9(b) requires that a plaintiff plead fraud with particularity, so that the pleading

> provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs.

*Tuchman,* 14 F.3d at 1067.

▮ To satisfy rule 9(b)'s heightened pleading standard, a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *WMX Technologies, Inc.,* 112 F.3d at 177. Furthermore, if allegations regarding a misleading or fraudulent statement are made on information and belief, "the complaint shall state with particularity all facts on which that belief is formed." PSLRA, 15 U.S.C. § 78u–4(b)(1). In addition, a plaintiff must attribute the misleading statements on which his claim is based to a particular defendant. In other words, "the plaintiff is 'obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.'" *In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 752 (N.D.Cal.1997) (citation omitted). This rule, however, is applied in tandem with the presumption that senior executives of a corporate defendant may be held personally liable for misrepresentations contained in a public statement issued for the corporation. *See id.* at 759.

▮ Finally, a plaintiff must allege facts demonstrating scienter, which is a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Fifth Circuit has held that scienter may be satisfied by

> proof that the defendant acted with severe recklessness, which is "limited to those highly unreasonable omissions or misrep-

resentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."

*Tuchman,* 14 F.3d at 1067 (citations omitted).

Under rule 9, a plaintiff must adequately *plead* scienter to survive a motion to dismiss. *Tuchman,* 14 F.3d at 1067. Before Congress passed the PSLRA in 1995, the Fifth Circuit—which adopted the Second Circuit's approach—held that a plaintiff could raise an inference of fraudulent intent either (1) by pleading facts which identify circumstances indicating the defendant's conscious or reckless behavior, or (2) by pleading facts which allege a defendant's motive and opportunity to commit securities fraud. *See id.*

Allegations sufficient to properly plead scienter are the subject of much debate among the parties herein. The issue arises because Congress apparently heightened the pleading requirements regarding scienter when it passed the PSLRA in December of 1995, which amended the Securities and Exchange Act. Section 21D(b)(2) of the PSLRA states:

> In any private action arising under [the Act] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

15 U.S.C. § 78u–4(b)(2) (emphasis added). This provision, by its own terms, does nothing to alter the *level* of intent previously required to prove a section 10(b) violation (*i.e.,* with conscious disregard, knowingly, or intentionally).[2] The statute, however, ex-

---

2. Defendants urge the Court to examine the legislative history of the PSLRA. The provision at issue, however, is unambiguous with regard to the state of mind required: it clearly does not

attempt to supply a specific level of intent, but refers the reader to whichever cause of action in the Securities and Exchange Act a plaintiff brings suit, which in this case is Section 10(b).

pressly adopts only one of the two ways in which a plaintiff could previously *plead* scienter in the Fifth Circuit. Thus, the question arises whether Congress intended to eliminate the motive and opportunity test as a way to plead scienter. This question remains open in this circuit, as the Fifth Circuit has not yet squarely addressed it.

Defendants argue that no longer can a plaintiff's pleading raise a "strong inference" of fraudulent intent merely by pleading a defendant's motive and opportunity to commit fraud. In support, Defendants refer the Court to district court opinions from around the country which have ruled that, in passing the PSLRA, Congress intended to raise the pleading requirements for alleging scienter by eliminating the motive and opportunity test. *See, e.g., In re Silicon Graphics, Inc. Securities Litigation,* 970 F.Supp. at 757 ("Motive, opportunity, and non-deliberate recklessness may provide some evidence of intentional wrongdoing, but are not alone sufficient to support scienter unless the totality of the evidence creates a strong inference of fraud.").

Plaintiffs, on the other hand, urge the Court to adopt the view expressed by Judge Sanderson of our own district, and adopted by Chief Judge Buchmeyer, in *STI Classic Fund v. Bollinger Industries, Inc.,* 1996 WL 885802 (N.D.Tex. October 25, 1996), that the motive and opportunity test is still viable for measuring a plaintiff's allegations of scienter. In *STI Classic Fund,* Judge Sanderson observed:

> [T]hat Congress chose not to codify motive and opportunity as pleading requirements ... does not indicate that Congress chose to specifically disapprove the motive and opportunity test. The Court has little doubt that when Congress wishes to supplant a judicially-created rule it knows how to do so explicitly, and in the body of the statute.

*Id.* 1996 WL 885802 at *1 (quoting *Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.,* 927 F.Supp. 1297, 1311 (C.D.Cal. 1996)).

After considering the arguments of both sides, this Court concludes that Judge Sanderson's—and Plaintiffs'—view is the correct interpretation of the PSLRA. *See also WMX Technologies, Inc.,* 112 F.3d at 177–78 ("This suit was filed prior to the effective date of the [PSLRA], and while its provisions do not apply, the Act adopted the same standard we apply today."). As such, Plaintiffs may meet the heightened pleading requirements of rule 9 and section 10(b), as amended by the PSLRA, by alleging either motive and opportunity to commit fraud, or by pleading facts which identify circumstances indicating Defendants' conscious or reckless behavior, so long as the totality of the allegations raises a strong inference of fraudulent intent.

### ANALYSIS

#### *Plaintiffs' Allegations*

The complaint, which spans eighty pages, alleges that Defendants made misrepresentations relating to the following: (1) FoxDrug's automation efforts; (2) FoxDrug's distribution contracts; (3) the accounting charge taken for the third fiscal quarter of 1996; (4) FHC's market value and overall financial status; (5) FoxDrug's Second and Third Quarters of 1996; and (6) FoxDrug's accounting controls. Similarly, the material omissions which Plaintiffs claim Defendants made concern the following alleged facts: (1) that there were numerous problems and breakdowns associated with implementing FoxDrug's new computer, inventory management, and distribution systems; (2) that FHC was forced to implement the new computer systems before completing testing on them to meet its contractual obligations to UHC and others; (3) that there were unplanned expenses associated with the problems in implementing the new systems; (4) that Defendants procured FHC's contracts with large customers such as UHC, Rite Aid, Omnicare, and ValueRx on the basis of the cost savings that were supposed to materialize from the new automated distribution system; (5) that creditors' had severely restricted trade credit to FHC by July of 1996; (6)

The fact that other district courts have concluded that the PSLRA eliminated recklessness as a standard for liability does not go unnoticed, but this Court concludes otherwise.

that, at the time Defendants denied that the company would file for bankruptcy, the company's large losses and reduction in trade credit made a bankruptcy filing inevitable; (7) that Defendants materially overstated the company's inventories in the financial statements for the second and third fiscal quarters of 1996, thereby inflating the value of the company's assets and, in turn, its stock; and (8) that Defendants' accounting controls and systems were inadequate, as they failed to properly account for important financial data bearing on the value of the stock.[3]

In the complaint, Plaintiffs allege facts which explain why Defendants' representations were false or material omissions at the time they were made. Where a particular defendant is quoted in any of the above-listed sources, Plaintiffs supply the name of the speaker and the specific quote at issue. Likewise, when an allegation concerns a corporate announcement, Plaintiffs quote the statements alleged to be misleading.

*Failure to State a Section 10(b) Claim*

Defendants first argue that Plaintiffs fail to state a section 10(b) claim because Defendants made no actionable misrepresentations or omissions. Defendants complain that Plaintiffs' allegations relate to Defendants' failed business strategies and mismanagement, and that Plaintiffs mischaracterize

many of Defendants' statements as misrepresentations when, in fact, they are simply generalized statements of optimism or "corporate-speak" as to business strategies or future performance, rather than actual misrepresentations.

Plaintiffs respond that Defendants are liable for statements of opinion or belief, as well as predictive statements, if such statements have no reasonable basis. The statements which Defendants characterize as corporate optimism, according to Plaintiffs, are predictive statements which Defendants knew, at the time they were made, were unfounded and unreasonable.

 As the Fifth Circuit has held, a predictive statement, which could include statements of optimism and belief, "contains at least three factual assertions that may be actionable: 1) The speaker genuinely believes the statement is accurate; 2) there is a reasonable basis for that belief; and 3) the speaker is unaware of any undisclosed facts that would tend seriously to undermine the accuracy of the statement." *Rubinstein v. Collins,* 20 F.3d 160, 166 (5th Cir.1994). Under the "bespeaks caution" doctrine, if a defendant adds a cautionary statement to the predictive statement, then the statements may not be actionable as a matter of law. *Id.* at 166–67. This doctrine, however,

3. According to Plaintiffs, Defendants' misrepresentations stem from the following sources: (1) the public announcement of the Rite Aid Contract; (2) the issuance of the 1995 annual report and accompanying letter to shareholders; (3) a press release on July 27, 1995, announcing the first fiscal quarter of 1996 financial results; (4) the issuance of the 1996 first quarter report, an accompanying letter, and the First Quarter 10–Q filed with the SEC; (5) the public announcements of the Omnicare and ValueRx contracts; (6) a press release issued on October 30, 1995, announcing the second fiscal quarter of 1996 financial results; (7) the Mid–Year Report for 1996 and Form 10–Q for the second fiscal quarter filed with the SEC; (8) Defendants' statements in response to a negative media report by commentator Dan Dorfman of the CNBC network on November 21, 1995; (9) Defendants' statements reported in the November/December 1995 issue of *Wholesale Drugs Magazine*; (10) a press release issued on February 1, 1996, announcing the third fiscal quarter of 1996 financial results and commenting on the special charge assessed in the third quarter; (11) the Form 10–Q for the third fiscal quarter filed with

the SEC on February 15, 1996; (12) a press release issued on July 1, 1996, announcing the fourth fiscal quarter of 1996 financial results, commenting on the special charge assessed in the fourth quarter, and announcing a stock repurchase; (13) a press release issued on July 11, 1996, announcing FoxCorp's intent to sell one of its business units and to return to profitability; (14) statements in response to a negative media report on July 11, 1996, concerning the possibility that FHC could go bankrupt; (15) the public announcement on July 31, 1996, of a new, five-year distribution agreement with May's Drug Stores; (16) the public announcement on August 15, 1996, that FHC planned to divest FoxDrug and treat it as a discontinued operation for accounting purposes; (17) Defendants' statements reported in the *Dallas Morning News* and *The Wall Street Journal* on August 17 and August 19, 1996, respectively, concerning the value of the stock and the possible sale of FHC itself; and (18) a press release issued on August 20, 1996, one week before the FHC subsidiaries filed for bankruptcy, that FHC had executed an agreement to sell FoxDrug to an investor group.

"merely reflects the unremarkable proposition that statements must be analyzed in context." *Id.* at 167. As to statements which are false by failure to fully disclose information, the Fifth Circuit has held that " 'a duty to speak the full truth arises when a defendant undertakes the duty to say anything.' " *Id.* at 170 (citation omitted).

■ The Court has examined Defendants' alleged statements in light of the appellate court's holding in *Rubinstein* and concludes that, when read in the context of all the allegations in the complaint, Plaintiffs have properly alleged that Defendants' statements were baseless or untruths and may, therefore, be actionable as unfounded predictions under section 10(b). As such, Plaintiffs have pleaded sufficiently to survive a motion to dismiss. The Court denies the motion to dismiss on this ground.

Defendants also argue that the challenged misrepresentations were not material. They further insist that the omissions of which Plaintiffs complain concern trivial, day-to-day management matters which are not ordinarily disclosed to investors.

Plaintiffs counter that, when read in tandem with their allegations in the complaint regarding what Defendants knew and when they knew it, Defendants' statements are material misrepresentations so as to make them actionable under section 10(b). Further, Plaintiffs argue that, with respect to their allegations of material omissions, they have alleged the specific facts which Defendants concealed and the manner in which those facts rendered Defendants' affirmative statements materially false and misleading.

A fact is material in the context of a section 10(b) claim if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

Although every statement or omission that Plaintiffs allege in the complaint to be misrepresentations may not be material under this standard, the Court concludes that there are enough sufficiently-pleaded misrepresentations and omissions to state a claim under section 10(b) and, thus, to survive a motion to dismiss. By way of example, many of Plaintiffs' allegations concern FoxDrug's automation efforts and how this affected the financial health of the company. Plaintiffs allege that FHC was counting on approximately $40 million in cost savings associated with the new automated distribution system to financially support the low bids on its new distribution agreements with UHC, Omnicare, and ValueRx. Plaintiffs allege that the implementation of the new systems was far more expensive than the company had anticipated, and that the systems failed to produce for the company the predicted—and much publicized—cost savings. Plaintiffs allege that, because so much was riding on the success of the new automation and information systems, data relating to the level of failure or success of FoxDrug's automation efforts were material to an investor's assessment of the risk in investing in FHC. Accordingly, the failure to disclose such information, or putting it in a false light, appears to be material within the meaning of section 10(b).

The Court has considered the parties' arguments and the complaint, and has scrutinized the allegations in light of the pleading requirements of section 10(b). Having done so, the Court concludes that, when read in its entirety, the complaint satisfies the pleading requirements of section 10(b). The Court denies the motion to dismiss for failure to state a claim.

### Failure to Plead Loss Causation

■ Defendants also move to dismiss Plaintiffs' complaint on the ground that they have failed to plead facts which establish that the alleged fraud caused the loss for which Plaintiffs seek recovery. Defendants essentially argue that, because the price of FHC stock declined throughout the class period and did not fall precipitously when the company announced the bankruptcy, Plaintiffs did not allege a causal nexus between their losses in FHC stock and Defendants' specific misrepresentations or omissions.

Plaintiffs respond that, for purposes of analyzing a motion to dismiss, they are required only to allege facts showing that the

economic harm they suffered was the result of Defendants' misrepresentations and omissions. According to Plaintiffs, by issuing numerous false and misleading statements and failing to disclose crucial information to investors, Defendants artificially inflated the price of FHC stock throughout the class period. Plaintiffs argue that loss causation is a fact question which cannot be resolved on a motion to dismiss, and that their allegations as to causation—which must be taken as true on a motion to dismiss—suffice. Plaintiffs rely on the case of *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1117 (5th Cir.1988), *rev'd on other grounds sub nom., Fryar v. Abell,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), for their position.

In *Abell,* the Fifth Circuit ruled on an appeal from a jury verdict and judgment which awarded the plaintiffs, who were investors in a bond scheme, damages for fraud under section 10(b), among other claims. While the court in *Abell* clearly was not concerned with the sufficiency of the pleadings on a motion to dismiss, its discussion as to loss causation is instructive. The court stated that, to satisfy loss causation, the misrepresentations and omissions must touch on the reasons for the decline in the investment's value. *Id.* Further, the omissions or misrepresentations are not actionable even if they are material and are relied on by the investors so long as those omissions and misrepresentations are not the proximate reason for the investors' loss. *Id.*

Here, the Court has already ruled that Defendants' omissions and misrepresentations were material and that Plaintiffs relied on them, albeit through the theory of fraud on the market. Plaintiffs need only allege facts which show that Defendants' omissions and misrepresentations caused the market price of the stock to be artificially inflated, and therefore to appear to be a good risk for investment, so that when the truth came out about the company's condition, the stock lost value and Plaintiffs suffered a loss. After

examining the complaint's allegations concerning loss causation, the Court determines that Plaintiffs have *alleged* causation sufficiently to put Defendants on notice of the charges against them and thereby avoid dismissal. *See Steiner v. Southmark Corp.,* 734 F.Supp. 269, 274 (N.D.Tex.1990). Whether Plaintiffs can *prove* their allegations of loss causation, the true issue on which Defendants here attempt to dismiss Plaintiffs' claims, is not an appropriate inquiry on a motion to dismiss.

### Failure to Plead Fraud with Particularity

Defendants assert that Plaintiffs have failed to meet the strict pleading requirements of fraud found in Fed.R.Civ.P. 9, discussed above. Specifically, Defendants argue that Plaintiffs have not pleaded with particularity and have used impermissible group pleading.

Plaintiffs respond that they have, in fact, particularized the time, place, content, and speaker of the misrepresentations and the nature of the omitted facts. Plaintiffs argue that they have also detailed the manner in which Defendants' statements were materially misleading when made. Further, Plaintiffs assert that, by clearly stating the facts on which they base their fraud claims, they have satisfied the PSLRA requirements for pleading on information and belief.

The Court has, to a certain extent, already addressed Defendants' argument earlier in the analysis. As to each of the statements Plaintiffs rely on in the complaint, Plaintiffs allege who made the misrepresentations, the content of the misrepresentations, when they were made, and where they were reported. In addition, Plaintiffs provide a detailed chronology of events and, in doing so, allege why the statements or omissions were material misrepresentations at the time they were made. Furthermore, Plaintiffs clearly name each individual defendant whom they allege had a hand in the misrepresentation.[4] The

---

4. To the extent that Plaintiffs rely on group pleading for general statements or press releases issued by the corporation, the Court finds the complaint sufficient to survive a motion to dismiss. That a few of the alleged statements may not be attributable to a particular defendant

does not invalidate the Plaintiffs' claims against Defendants under the theory that high-level corporate officers, as Defendants all are, may be responsible for the statements issued by their company to the public. Obviously, Plaintiffs' recovery, if any, against a particular defendant

Court concludes that, under the pleading standards of rule 9 and section 10(b) articulated above, Plaintiffs' allegations are sufficiently particularized to allege fraud.

■ Defendants also complain in their motion to dismiss that Plaintiffs have failed to sufficiently allege scienter as to each of the defendants. Plaintiffs counter that they have adequately pleaded scienter under both the motive and opportunity test or the conscious misbehavior test.

Plaintiffs first argue that the individual defendants had the motive of personal gain to commit fraud and, as senior level executives with stocks and stock options, the opportunity to do so. For example, Plaintiffs allege that when Defendant Estrin learned the FHC subsidiaries were insolvent and could not be sold for a profit, he sold $10.7 million in stock at inflated prices only days before the bankruptcy filing. Similarly, Plaintiffs allege that Defendant McKee unloaded all of the stock he owned during the class period. As to Defendant Butler, Plaintiffs allege that he purchased FHC common stock whenever the company was discussing the sale of the subsidiaries, which would have more than covered the price of Butler's purchases.

Allegations of insider trading "in suspicious amounts or at suspicious times is, of course, presumptively probative of bad faith and scienter." *Rubinstein,* 20 F.3d at 169. Defendants argue that none of their stock sales constitute improper insider trading, but their argument addresses a fact question rather than the issue of whether Plaintiffs' pleading complies with the requirements of rule 9. The Court concludes that, on the basis of alleged insider trading, Plaintiffs have alleged scienter sufficiently as to Defendants Butler, Estrin, and McKee.

Plaintiffs also argue that Defendants' desire to sell FHC at great personal profit motivated them to make fraudulent misrepresentations and material omissions. Plaintiffs allege that the individual defendants

stood to receive massive payments upon sale of the drug distribution business. Specifically, Plaintiffs allege that Defendants Butler and Estrin would each be entitled to a "termination" payment of approximately $2.2 million in the event FHC's subsidiaries were sold and, similarly, Massman would be entitled to a $400,000 payment.

The incentive to complete the lucrative sale of a business, and the personal pecuniary benefits associated therewith, can create a strong motive to engage in fraud and, logically, can raise an inference of scienter sufficient to support allegations of fraud. *See, e.g., Trecker v. Scag,* 679 F.2d 703 (7th Cir.1982). Defendants argue that this circumstance, alone, is insufficient to constitute scienter, but the cases they cite in support of their argument do not, in fact, suggest this proposition in the context of the circumstances alleged here.[5] Furthermore, Plaintiffs also allege insider trading, and therefore, the termination payments are not the only circumstance which supports an inference of fraudulent intent on the part of Defendants.

Plaintiffs allege additional facts to support scienter, including allegations which indicate that Defendants knew at the time they made certain statements that they were false. The Court, however, finds it unnecessary to address them. After consideration of the entire complaint, the Court is of the opinion that Plaintiffs have succeeded in alleging scienter. Defendants' motion to dismiss on this ground is denied.

### Section 20(a) Claim

Defendants move for dismissal of Plaintiffs' claim brought under section 20(a) of the Act. This type of claim is derivative of a section 10(b) claim. Defendants' sole ground for dismissal of this claim is that, because the Court should dismiss the section 10(b) claim, of which a section 20(a) claim is derivative, the Court should also dismiss the section 20(a) claim. Because the Court is not dismissing the section 10(b) claim, Defendants'

---

will be limited to those misrepresentations to which Plaintiffs can *prove* that defendant contributed.

5. The cases Defendants rely on include: *Melder v. Morris,* 27 F.3d 1097, 1102 (5th Cir.1994); *Tuchman,* 14 F.3d at 1068; and *Zeid v. Kimberley,* 930 F.Supp. 431, 438 (N.D.Cal.1996).

ground for dismissal of the section 20(a) claim is moot.

### State Law Claim

█ Plaintiffs bring a claim under state law for negligent misrepresentation. Defendants move to dismiss this claim on the basis that Plaintiffs cannot meet one element of the claim, reliance. Defendants argue that Texas law has not yet recognized the federal presumption of fraud on the market as a means to supply the reliance element of a fraud claim. Rather, Defendants assert that Plaintiffs must allege actual reliance. In support, Defendants cite a single opinion, *Steiner v. Southmark Corp.*, 734 F.Supp. 269 (N.D.Tex.1990).

In *Steiner,* Judge Fitzwater denied a motion to dismiss the very same claim. The court stated:

> As to the issue of reliance, the court rejects plaintiffs' attempts to incorporate the fraud-on-the-market presumption of reliance into Texas state law. Absent Texas precedent extending the theory to this degree, this court applying state law will not fashion such an extension. The court is unable to conclude, however, that plaintiffs will be unable to prove direct reliance. Plaintiffs have adequately alleged direct reliance to withstand a motion to dismiss.

734 F.Supp. at 279. Under *Steiner's* example, then, the Court should deny the motion to dismiss the state law claim if Plaintiffs' complaint sufficiently alleges direct reliance.

Plaintiffs first urge that *Steiner* did not foreclose the application of the theory of fraud on the market, and so this Court could apply it to their state law claim. Without citing any relevant Texas authority, Plaintiffs essentially ask the Court to apply a federally-created presumption to a state law cause of action. As the court did in *Steiner,* this Court declines to do so, as it is not appropriate for a federal court to engage in extending the boundaries of a state law claim without clear direction from Texas courts.

In the alternative, Plaintiffs also ask the Court to examine their pleading for allegations of direct reliance as required under state law. The Court has done so and concludes that Plaintiffs have sufficiently alleged direct reliance. Whether Plaintiffs will be able to prove direct reliance is not a matter appropriate for consideration on a motion to dismiss. The Court denies Defendants' motion to dismiss Plaintiffs' state law claim for negligent misrepresentation.

It is therefore **ORDERED** that Defendants' Motion to Dismiss, filed on June 23, 1997, is hereby **denied.**