IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 96-20461

DENNIS WILLIAMS,
RICHARD DREILING,

Plaintiffs-Appellees,

versus

WMX TECHNOLOGIES, INC. formerly known as
Waste Management, Inc. and
ENVIRONMENTAL INDUSTRY ASSOCIATIONS,
formerly known as National Solid Waste Management
Association; DEAN L. BUNTROCK,

Defendants-Appellants.

Appeals from the United States District Court
For the Southern District of Texas

April 24, 1997

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is a class action suit alleging fraud in the sale of securities. WMX, EIA, and Dean Buntrock bring this interlocutory appeal from the district court's denial of their motion to dismiss Williams and Dreiling's complaint. We find that the amended complaint failed to allege fraud with particularity, reverse the order of the district court, and remand with instructions to dismiss.

In 1987, news services over much of the world followed the plight of a barge heaped with New York state garbage off the coast with no landfill willing to take its waste. This event seeded a public perception that the United States was running out of space to dispose of its trash. Much public discussion followed. Finally, on January 19, 1995, the <u>Wall Street Journal</u> published an article detailing the history of this "crisis," postulating that we were never really running out of disposal space. This article also attributed much of the media's attention about declining landfill space to large garbage companies willing to exploit public fear of a garbage crisis.

On February 24, 1995, Dennis Williams and Richard Dreiling filed this suit alleging that WMX, a national garbage hauling service, and its president, Dean Buntrock, defrauded the public, government agencies, and local trash haulers who sold out to WMX by perpetuating the "garbage crisis" myth. Plaintiffs also sought to represent a class of purchasers of "securities, including the common stock of WMX for a period beginning January 1, 1987, and ending December 31, 1993." The putative class has not been certified. Williams and Dreiling were co-owners of Texas Sanitation Industries, sold to WMX in exchange for WMX stock. On June 6, 1995, Williams and Dreiling filed an amended pleading, adding EIA, a trade group formed to lobby for the interest of the garbage companies, as a defendant and modifying its claims to allege violations of RICO and aiding and abetting a 10b-5

violation. Williams and Dreiling alleged that EIA was liable for the fraud committed by WMX because it is linked both operationally and financially with WMX and that it participated in disseminating false and misleading material in the market.

In their amended complaint, Williams and Dreiling alleged that during the time they were contemplating whether to sell TSI for stock, an employee of WMX, Lynn Lantrip, stated that: 1) there existed a shortage of landfill capacity; 2) TSI would soon have no place to dump the trash it hauled; 3) WMX could soon be unable to accept any trash hauled by TSI; and 4) WMX owned and controlled more landfill capacity than any other company in the United States. Their brief also alleged that WMX's January 1992 prospectus falsely stated that:

> Suitable sanitary landfill facilities have become increasingly difficult to obtain because of land scarcity, local resident opposition and expanding governmental regulation. The scarcity of sites and increased volume of wastes have resulted in more intensive use of existing sanitary landfill facilities. As its existing facilities become filled, the solid waste disposal operations of the Company are and will continue to be materially dependent on its ability to purchase, lease or obtain operating rights for additional sites and obtain the necessary permits from regulatory authorities to operate them. There can be no assurance that additional sites can be obtained or that existing facilities can continue to be operated. However, management believes that the facilities currently available to the Company are sufficient to meet the needs of its current operations for the foreseeable future.

Attached to the amended complaint were 62 newspaper articles alleged to contain public misrepresentations by WMX and EIA, some of which were excerpted in the body of the amended complaint. Williams and Dreiling urged that these articles demonstrated that

3

WMX and EIA conspired to perpetrate the "mass deception" that there was a garbage crisis.

The district court denied a motion to dismiss the amended complaint under Fed. R. Civ. P. 9(b) and 12(b)(6), and a motion to reconsider, but granted a request to certify the interlocutory ruling for appeal. Judge Hittner found that whether the pleading of fraud met the particularity requirement presented a close question. We granted the requested leave to appeal.

## II.

The amended complaint alleged violations of RICO predicated on mail and wire fraud, misrepresentations in violation of 10b-5, and state law claims of fraud and negligent misrepresentation. We must decide if the amended complaint was detailed enough to survive the motion to dismiss, an attack leveled at all claims, resting as they do upon the same asserted "fraud".

Fed. R. Civ. P. 9(b) applies to securities fraud and RICO claims resting on allegations of fraud. Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068 (5th Cir. 1994)(securities fraud); Tel-Phonic Serv., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)(RICO). WMX contends that 9(b) also applies to the state law claims of common law fraud and negligent misrepresentation. Because Williams and Dreiling do not attempt to distinguish these claims in their brief, and because the state law claims rely upon the same misrepresentations as the federal claims, we do not distinguish between them here. See Shushany v. Allwaste, Inc., 992 F.2d 517, 520 n.5 (5th Cir. 1993). We see no principled

4

reason why the state claims of fraud should escape the pleading requirements of the federal rules, and the parties have not urged a separate focus upon state law claims of negligent misrepresentation.

The elements of fraud include: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury. Cyrak v. Lemon, 919 F.2d 320 (5th Cir. 1990). Pleading fraud with particularity in this circuit requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068 (5th Cir. 1994); see also Melder v. Morris, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994); Shushany v. Allwaste, 992 F.2d 517, 520 (5th Cir. 1993).

As the Second Circuit has noted, articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). We agree with the Second Circuit's approach. This suit was filed prior to the effective date of the Private Securities Litigation Reform Act, and while its provisions do not apply, the Act adopted the same standard we apply today. See H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 41 (1995); 15 U.S.C. § 78u-4(b).

5

The cry of pleading technicalities must be put in perspective. The rules of civil procedure adopted in 1938 implemented a profound change in the role of pleading in defining issues for trial. In the main, the complaint became an ignition point for discovery. Issues were to be "defined" by discovery, not pleading. Our reverential treatment of the large achievements of the 1938 rules may not have fully counted its price, or at least the price over time seems to have gone up as pretrial process dwarfs actual trials. We do not fully understand the extent of these difficulties or their cause. It does remain clear that ready access to the discovery engine all the while has been held back for certain types of claims. An allegation of fraud is one. Rule 9(b) demands a larger role for pleading in the pre-trial defining of such claims.

That said, the requirement for particularity in pleading fraud does not lend itself to refinement, and it need not in order to make sense. Directly put, the who, what, when, and where must be laid out <u>before</u> access to the discovery process is granted. So today we neither set springs for the unwary nor insist on "technical" pleading requirements. We remind that this bite of Rule 9(b) was part of the pleading revolution of 1938. In short, we apply the rule with force, without apology. At the same time, we read Rule 9(b) as part of the entire set of rules, including Rule 8(a)'s insistence upon "simple, concise, and direct" allegations. Relatedly, while 9(b) stands as an exception to an

overarching policy of immediate access to discovery, it did not reflect a subscription to fact pleading.

The inferior courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific. When a limitation period looms large and the context strongly suggests that claimed "fraud" walks close to non-actionable expression of opinion, 9(b) takes on especial force. Finally, we must not dim the beacon of Rule 8(f) that "all pleadings shall be construed as to do substantial justice." We must give a fair opportunity to plead.

A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail. The amended complaint here, although long, states little with particularity. Williams and Dreiling allege that the "fraud" was implemented by false statements in WMX's prospectus, its face-to-face negotiations for the purchase of competitors' companies, and in false disseminations to the market. First, they claim that a representative of WMX, Lynn Lantrip, made face-to-face misrepresentations to them at a meeting to discuss the sale of their trash hauling company to WMX. Second, they claim that WMX's prospectus contained misrepresentations, presumably in the only language from the prospectus included in the amended complaint. This is an excerpt from a section of the prospectus entitled "Risk Factors." The final basis for Williams and Dreiling's allegations of fraud is a collection of newspaper articles, few of which are excerpted in the

complaint.  We will consider each of these allegations for their particularization of fraud.

### A.  The Discussion with Lynn Lantrip

Williams and Dreiling claim that they sold their company in large part on the perception of a landfill crisis and misrepresentations made by Lynn Lantrip that encouraged this perception.  The amended complaint does not state a place or time that these representations were made.  WMX suggests a motive for Williams and Dreiling's apparent reluctance to be particular: because they received WMX stock on February 26, 1992, and this suit was filed on February 24, 1995, the allegedly fraudulent misstatements occurred outside the limitations period established in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991).  Because we do not reach the question of limitations, we do not address WMX's assertion.  At a minimum, Rule 9(b) requires that the plaintiff specify the particulars of "time, place, and contents of the false representations."  Tuchman, 14 F.3d at 1068.  The allegations of face-to-face fraudulent acts by Lantrip fail for lack of particularity.

### B.  The Prospectus

Williams and Dreiling broadly allege that WMX's prospectus, as excerpted in their complaint, contained fraudulent statements about the future of landfill availability.  However, it is not clear from the amended complaint which assertions in the excerpted prospectus statement they are challenging as false.  The amended complaint merely excerpts the prospectus and provides no analysis of its

8

contents or falsity. On its face, the statement seems to say no more than the future of WMX as a waste disposal company is materially dependent on its ability to find space to dump its waste. The statement also says that new landfills have been hard to locate, but that WMX presently has sufficient facilities available for the disposal of waste. The language of the excerpt is equivocal, which is appropriate because the "risk factors" section of a prospectus is not intended to make promises or claims regarding the future, but is meant to warn investors of factors that can affect a company's future performance. Williams and Dreiling's lack of specificity as to which portion is false and why prevents this portion of the complaint from meeting the standard of pleading set out in Rule 9(b).

## C. The Newspaper Articles

The allegations of fraud perpetrated in the press suffer from the same deficiencies as Williams and Dreiling's other allegations. They do not attempt to parse the articles to demonstrate which statements were fraudulent and attributable to WMX, EIA, or Buntrock. Although newspaper articles attached to a pleading may be considered by this court, Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017 (5th Cir. 1996), plaintiffs must also "set forth an explanation as to why the statement or omission complained of was false or misleading." In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994)(en banc).

The articles are referenced in a section of the complaint titled "The Myth is Perpetrated in the Marketplace," which reads:

9

> WMX and its trade association the NSWMA were disseminating the false and fraudulent myth of a landfill crises [sic] in a huge number of ways and means. Attached hereto as Exhibit "1" are excerpts of news articles that either quote WMX and/or NSWMA, or, on information and belief, rely on information supplied by these defendants.

The failure of this section of the complaint to identify specific statements made by any of the defendants is fatal to Williams and Dreiling's action. <u>See</u> <u>generally</u>, <u>Hershfang v. Citicorp</u>, 767 F.Supp. 1251, 1259 (S.D.N.Y. 1991)(decrying the use of "a patchwork of newspaper clippings" to establish a claim of securities fraud).

These vague pleadings illustrate the practical basis for the requirement that a plaintiff point to specific statements made by the defendants. Many of the newspaper excerpts attached to Williams and Dreiling's complaint quote the NSWMA, the predecessor to the EIA, without specifying who gave information to the paper. These excerpts, standing alone, cannot satisfy the "who, what, when, where, and how" required by Rule 9(b). <u>Melder v. Morris</u>, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994)(citing <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir.), <u>cert. denied</u>, 498 U.S. 941 (1990)). <u>San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co.</u>, 75 F.3d 801 (2d Cir. 1996), is not to the contrary. In <u>Philip Morris</u>, the court found that unattributed newspaper statements were actionable where the article contained numerous other attributed quotes. <u>Id</u>. at 810. Here, the article excerpts contain no quotes from named officers or directors of WMX.

Many of the other article excerpts cited by Williams and Dreiling are along the lines of the one from the August 30, 1989,

10

Houston Post.  The excerpt of an article titled "Waste firm, 17 subdivisions sharing profits from trash recycling program" reads:

> The program to encourage recycling not only gives Waste Management a cash dividend -- the other 50 percent from the sale of recyclables -- but saves valuable space in the company's landfills.

This excerpt discloses nothing about a statement by an employee of WMX or EIA.  Indeed, it is unclear what fraudulent assertion Williams and Dreiling are challenging.  The only statement that can be construed as commenting upon landfill availability is that space in landfills is valuable, hardly actionable.

Other articles are just as innocuous.  It is unclear what purpose Williams and Dreiling have in mind when they cite articles that attribute to the NSWMA the notion that, although ensuring adequate garbage disposal now ranks third on a list of problems facing local officials, it had previously been ranked second.  Similar infirmities pervade all of the articles attached to the complaint.  This lack of specificity stands in contrast to the widespread nature of the conspiracy that Williams and Dreiling attempt to allege.

Excerpts of the articles that appear in the body of the complaint are unaccompanied by specific allegations.  No attempt is made to isolate statements and particularize their falsity.  In a section of the complaint titled "WMX/NSWMA Spread the Myth of a Landfill Crisis," Williams and Dreiling cite a Wall Street Journal article asserting that "Big trash-handling companies certainly knew there was no landfill crisis but helped spread the word of one

11

anyway. . . ." Complaint, at 8. This section of the complaint continues, noting that the article stated that:

> Dean L. Buntrock, chairman and chief executive officer of WMX Technologies, Inc., had loaded up on dump space in the 1970s and 1980s. He had also started a trade group and lobbying arm, the National Solid Waste Management Association. After the Mobro voyage, the group was widely quoted asserting that dump capacity was shrinking.
> . . .
> WMX was . . . telling customers as recently as 1993: "This nation is quickly running out of places to dispose of trash."

These excerpts are insufficient to put any of the defendants on notice as to which of their assertions are challenged. Indeed the excerpts do not quote a defendant, they merely say that the defendants were widely quoted or paraphrase previous statements.

### III.

We find that the amended complaint failed to state claims of fraud with the particularity required by Fed. R. Civ. P. 9(b). Plaintiffs have failed in two attempts to plead with particularity. Their efforts have been carefully reviewed by an able district judge. The order of the district court denying the defendants' motion to dismiss is REVERSED and this case is REMANDED to the district court with instructions to dismiss.

REVERSED and REMANDED with instructions.

12