John W. ROBERTSON, et al., Plaintiffs,

v.

David B. STRASSNER, et al., Defendants.

No. Civ.A. H–98–364.

United States District Court,
S.D. Texas,
Houston Division.

Oct. 8, 1998.

David E. Sharp, Roger B. Greenberg, Greenberg Peden Siegmyer & Oshman, Houston, TX, Thomas E. Egler, Helen J. Hodges, Katherine L. Blanck, Milberg Weiss Bershad Hynes and Lerach, San Diego, CA, for plaintiffs.

Kenneth R. Wynne, Wynne & Maney, Houston, TX, Timothy R. McCormick, Thompson & Knight, Dallas, TX, for defendants.

Roger B. Greenberg, Greenberg Peden Siegmyer & Oshman, Houston, TX, for Loretta White, Woodmont Investments, Inc., movants.

Charles C. Correll, Jr., Porter & Hedges, Houston, TX, for Ryder Scott Company Petroleum Engineers, movant.

## MEMORANDUM OPINION AND ORDER

ATLAS, District Judge.

This securities fraud case is before the Court on Defendants' Motion to Dismiss

Plaintiffs' Amended Complaint [Doc. # 18]. The parties agree that Plaintiffs must satisfy the pleading requirements of both Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4. The Court has carefully reviewed the Amended Complaint [Doc. # 17], Defendants' Motion to Dismiss, Plaintiffs' Opposition [Doc. # 21], and Defendants' Replies [Doc. # 23 and # 24]. Based on this review and the application of binding and persuasive legal authority, the Court concludes that Plaintiffs have satisfied their burden under Rule 9(b) and the PSLRA. Defendants' Motion to Dismiss is **denied.**

## I. *FACTUAL BACKGROUND*

Defendant Offshore Energy Development Corporation ("OEDC") engages primarily in exploration for and production of natural gas in the Gulf of Mexico. Defendant David B. Strassner was OEDC's President in November 1996, and Defendant Douglas H. Kiesewetter was its Chief Operating Officer. Defendants David R. Albin, Strassner, and Kiesewetter were members of OEDC's board of directors. Defendant Natural Gas Partners, L.P. ("NGP") is a limited partnership of which Albin is a member and manager. NGP was a major investor in and creditor of OEDC.

Plaintiffs purchased stock in OEDC during an initial public offering ("IPO") between November 1, 1996 and April 18, 1997. Plaintiffs allege that the IPO price of $12.00 per share was artificially inflated due to allegedly false and misleading statements made by Defendants during the IPO process. Plaintiffs further allege that Defendants made additional false statements during the five months following the IPO. Plaintiffs allege that Defendants engaged in this scheme to defraud primarily to raise over $12 million needed to repay a loan from OEDC to NGP. Plaintiffs also allege that Defendants wanted to sell some of their own shares in OEDC at artificially inflated prices.

On April 18, 1997, Defendants publicly advised that the financial and operational condition of OEDC was precarious and that OEDC had agreed to pay NGP additional funds to assist in locating a buyer for the company. The price of OEDC shares fell by more than 50% to $3.25 per share.

In December 1997, Titan Exploration, Inc. ("Titan") acquired OEDC for approximately $6.46 per share. Titan is a public corporation in which Defendant NGP owns a controlling interest.

Plaintiffs filed their Class Action Complaint on February 6, 1998 alleging violations of Sections 10(b) and 20(a) of the Securities and Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a) and Securities and Exchange Commission Rule 10(b)–5.[1] Plaintiffs filed an Amended Class Action Complaint on May 18, 1998, and Defendants moved to dismiss. The parties have submitted thorough briefs in support of their respective positions, and the motion is ripe for decision.

## II. *APPLICABLE LEGAL STANDARDS*

### A. *Motion to Dismiss*

Rule 12(b)(6) allows for dismissal of a complaint if the plaintiff fails "to state a claim upon which relief may be granted." A motion to dismiss is "viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M University System,* 117 F.3d 242, 247 (5th Cir.1997). Dismissal is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Holmes v. Texas A & M Univ.,* 145 F.3d 681, 683 (5th Cir.1998) (citations omitted).

In deciding whether dismissal is warranted, the Court accepts as true the non-conclusory allegations in the plaintiff's complaint. *Khurana v. Innovative Health Care Systems, Inc.,* 130 F.3d 143, 147 (5th Cir.1997) (petition for cert. filed March 12, 1998); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045,

---

1. Plaintiffs have not moved for class certification on either the Complaint or the Amended Complaint.

1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Zuckerman v. Foxmeyer Health Corp.,* 4 F.Supp.2d 618, 621 (N.D.Tex.1998). A motion to dismiss for failure to plead fraud with the particularity required by Rule 9(b) is treated as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 901 (5th Cir.1997).

### B. Standards for Pleading Securities Fraud

*Section 10(b) Elements.*—To state a claim based on Section 10(b) of the Securities Exchange Act of 1934 (the "Act"), the plaintiff must allege "1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997).

*Rule 9(b) Requirements.*—Rule 9(b) of the Federal Rules of Civil Procedure provides a heightened pleading requirement for allegations of fraud. To satisfy the burden imposed by Rule 9(b), the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Zuckerman,* 4 F.Supp.2d at 622 (quoting *Williams,* 112 F.3d at 177), and *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). *See also Oppenheimer v. Prudential Securities Inc.,* 94 F.3d 189, 195 (5th Cir.1996).

*The PSLRA's Requirements.*—The PSLRA imposes additional pleading requirements on plaintiffs in securities fraud actions. If plaintiffs' allegations are based on information and belief, "the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *Zuckerman,* 4 F.Supp.2d at 622. Plaintiffs must also distinguish among the defendants, attributing each allegedly fraudulent statement to a particular defendant or defendants. *Zuckerman,* 4 F.Supp.2d at 622 (citing *In re*

*Silicon Graphics, Inc. Securities Litigation,* 970 F.Supp. 746, 752 (N.D.Cal.1997)). "This rule, however, is applied in tandem with the presumption that senior executives of a corporate defendant may be held personally liable for misrepresentations contained in a public statement issued for the corporation." *Id.*

As a final matter, plaintiffs in securities fraud litigation must allege facts which demonstrate scienter. *Zuckerman,* 4 F.Supp.2d at 622. Scienter is a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Fifth Circuit has held that scienter may be satisfied by

> proof that the defendant acted with severe recklessness, which is "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it".

*Tuchman,* 14 F.3d at 1067; *Cyrak v. Lemon,* 919 F.2d 320, 325 (5th Cir.1990). Before the enactment of the PSLRA, plaintiffs could adequately plead scienter by pleading facts which allege a defendant's motive and opportunity to commit securities fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Zuckerman,* 4 F.Supp.2d at 622 (citing *Tuchman,* 14 F.3d at 1067); *Salinger v. Projectavision, Inc.,* 972 F.Supp 222, 232 (S.D.N.Y.1997). *Accord, STI Classic Fund v. Bollinger Industries, Inc.,* 1996 WL 885802 (N.D.Tex. Oct.25, 1996) (Memorandum and Recommendation of Magistrate Judge Sanderson, adopted by District Judge Buchmeyer, 1996 WL 866699, Nov. 12, 1996).

The PSLRA provides that securities fraud plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The parties disagree about what this PSLRA stan-

dard for pleading scienter means. Defendants, relying on the legislative history of the PSLRA,[2] argue that Congress rejected the "motive and opportunity" test in favor of a stricter pleading requirement. Defendants contend that "a plaintiff must plead a strong inference of fraudulent intent and allege specific facts 'that constitute strong evidence of conscious misbehavior' for each defendant." Defendants' Motion, at 8.[3] Plaintiffs contend that they can adequately plead scienter under the PSLRA by satisfying the prior "motive and opportunity" requirement, which had been adopted by the Fifth Circuit. *See Williams*, 112 F.3d at 177.[4] The issue has not yet been decided by the United States Court of Appeals for the Fifth or any other circuit.

■ The Court has reviewed the arguments by all parties, numerous district court authorities and the legislative history of the PSLRA.[5] The Court concludes, as did the *Zuckerman* and *STI Classic Fund* courts in this Circuit, that Plaintiffs may meet the heightened pleading requirements of Rule 9(b) and the PSLRA as applied to Section 10(b), by "alleging either motive and opportunity to commit fraud, or by pleading facts which identify circumstances indicating Defendants' conscious or reckless behavior, *so long as* the totality of the allegations raises a strong inference of fraudulent intent." *Zuckerman*, 4 F.Supp.2d at 623 (emphasis added). *See also Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1352 (S.D.Cal.1998); *In re Health Management Securities Litigation*, 970 F.Supp. 192, 201 (E.D.N.Y.1997); *Fugman v. Aprogenex, Inc.*, 961 F.Supp. 1190, 1195 (N.D.Ill.1997).

This result is driven by the language of the PSLRA, which addresses pleading requirements, not substantive standards of proof. "As with any question of statutory meaning, we begin with the language of the statute.... In determining a statute's plain meaning, we assume that absent any contrary definition, 'Congress intends the words

2. Defendants cite to the *Joint Explanatory Statement of the Committee of Conference*, H.R.Conf. Rep. No. 104–396, 104th Cong., 1st Sess. 31 (1995), at 31 ("Conf.Rep."").

3. Defendants argue that strong circumstantial evidence of reckless conduct alone would be insufficient under the PSLRA. There is a split of authority on this issue, but this Court concludes that allegations of recklessness, as that term is defined for purposes of securities fraud litigation, is sufficient to satisfy the requirements of the PSLRA if the allegations raise a strong inference of fraudulent intent. *Compare In re Silicon Graphics Securities Litigation*, 970 F.Supp. 746, 756–57 (N.D.Cal.1997) (non-deliberate recklessness is insufficient), with *In re Baesa Securities Litigation*, 969 F.Supp. 238, 242 (S.D.N.Y.1997) (pleading of recklessness as used in the *Hochfelder* definition of scienter is permissible to satisfy the PSLRA standard), and *In re Stratosphere Corporation Securities Litigation*, 1 F.Supp.2d 1096, 1107 (D.Nev.1998).

4. The Fifth Circuit in *Williams* applied the Second Circuit's approach to proper pleading of securities fraud allegations. *Williams*, 112 F.3d at 177–78 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). Prior to the PSLRA, the Second Circuit allowed a "strong inference" of scienter to be established by facts showing either (i) motive and opportunity to commit fraud or (ii) circumstantial evidence of either (a) reckless or (b) conscious behavior. *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 269 (2d Cir.1993), *cert. denied*, 511 U.S. 1017, 114

S.Ct. 1397, 128 L.Ed.2d 70 (1994). The Fifth Circuit noted that the PSLRA was inapplicable to the *Williams* case, which was filed prior to the PSLRA effective date, but stated that "the Act adopted the same standard we apply today." *Williams*, 112 F.3d at 178. *Williams* assiduously analyzed the alleged misstatements to determine if they met the 'who, what, when, where and how' required by Rule 9(b). *Id.* at 179.

5. Examples of cases holding that the "motive and opportunity test" still is viable to prove scienter are *In re Health Management Sec. Litig.*, 970 F.Supp. 192, 201 (E.D.N.Y.1997); *OnBank & Trust Co. v. FDIC*, 967 F.Supp. 81, 88–89 n. 4 (W.D.N.Y.1997); *Fugman v. Aprogenex, Inc.*, 961 F.Supp. 1190, 1195 (N.D.Ill.1997); *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246, 1252 (N.D.Ill.1997); *Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F.Supp. 1297, 1311–12 (C.D.Cal.1996); *see also Zeid v. Kimberley*, 930 F.Supp. 431, 438 (N.D.Cal.1996) (apparently accepting the "motive and opportunity" test by holding that plaintiffs failed to satisfy either test; no specific holding that the test remains unchanged by the PSLRA). Key cases holding to the contrary are *Novak v. Kasaks*, 997 F.Supp. 425, 429–30 (S.D.N.Y.1998); *In re Glenayre Technologies, Inc. Securities Litigation*, 982 F.Supp. 294, 298 (S.D.N.Y.1997); *In re Silicon Graphics, Inc. Securities Litigation*, 970 F.Supp. 746, 752 (N.D.Cal.1997); *Norwood Venture Corp. v. Converse, Inc.*, 959 F.Supp. 205 (S.D.N.Y. 1997); *In re Baesa Securities Litigation*, 969 F.Supp. 238 (S.D.N.Y.1997).

in its enactments to carry their ordinary, contemporary, common meaning." *United States v. Gray,* 96 F.3d 769, 774 (5th Cir. 1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1275, 137 L.Ed.2d 351 (1997).[6] Contrary to the views of courts on which Defendants rely, the PSLRA in the section concerning state of mind, 15 U.S.C. § 78u–4(b)(1, 2), purports to address the necessary standard of pleading; it does not explicitly alter any substantive standards of proof for particular causes of action.[6] Had Congress intended to alter substantive standards of proof for one or more claims in the federal securities laws, it could have so provided in the statutory language it enacted. *Zuckerman,* 4 F.Supp.2d at 623; *Queen Uno Ltd. Partnership v. Coeur D'Alene Mines Corp.,* 2 F.Supp.2d 1345, 1356 (D.Colo.1998); *STI Classics,* 1996 WL 885802, at *1. Thus, the Court must simply apply the statute as written. Defendants' argument, which seeks to apply confusing and contradictory legislative history to muddy Congress' otherwise clear language, and seeks to alter substantive standards of proof in addition to affecting pleading requirements, is rejected.[7]

Thus, so long as this Court is convinced that the matters alleged in the complaint raise a "strong inference of fraudulent intent," factually detailed allegations encompassing "motive and opportunity" are legally sufficient to defeat a motion to dismiss.

6. The Fifth Circuit admonishes that courts engaging in statutory construction engage in the following analysis:

[O]ur first task is to apply the "traditional tools of statutory construction", and determine whether the statute is ambiguous. If we decide that Congress has spoken directly to the precise issue, our job is done; we will "give effect to the unambiguously expressed intent of Congress." If, however, we find that Congress has not spoken plainly to the issue and the statute is ambiguous, we then will determine whether the agency's construction of the statute is a permissible one.

A statute is ambiguous if it is susceptible of more than one accepted meaning. In interpreting a statute, we begin with its plain language. Our attempt to ascertain plain meaning requires us to look not only to "the particular statutory language at issue" but also to "the language and design of the stat-

## III. *LEGAL ANALYSIS*

### A. *Sufficiency of Plaintiffs' Allegations of Fraud and Scienter*

■ Plaintiffs have sufficiently alleged facts supporting their Section 10(b) claim which satisfy the requirements of Rule 9(b) and the PSLRA. Plaintiffs have alleged—by time, place, content and speaker—the statements which they allege were false and misleading. Amended Complaint, ¶¶ 2, 8, 10–12, 22–26, 28–29, 32–35. Plaintiffs have explained factually why they believe the statements were false. Amended Complaint, ¶ 30. Plaintiffs have identified which defendant or defendants are charged with which allegedly false statements, or have identified the statement as one disseminated through a corporate document. Amended Complaint, ¶¶ 18, 20–26, 28–29, 32–35.

■ On the issue of scienter, the Court concludes that the Amended Complaint provides sufficient factual detail to "give rise to a strong inference that the defendant acted with fraudulent intent." The Amended Complaint in this case is a far cry from those where class plaintiffs seek to rely solely on conclusory or generalized allegations of motive and opportunity on the part of the defendants. Even were the Court to accept Defendants' argument that a pleading containing simple allegations of motive and opportunity is insufficient under the PSLRA, the cases on which Defendants rely conclude that such allegations nevertheless are rele-

ute as a whole." It is only when traditional methods of statutory construction fail to reveal a provision's meaning that we conclude that it is ambiguous.

*United Services Automobile Assn. v. Perry,* 102 F.3d 144, 146–47 (5th Cir.1996) (citations omitted).

6. The statute provides that a complaint alleging violations of Section 10(b) must state "facts giving rise to a strong inference that the defendant acted with the *required state of mind.*" 15 U.S.C. §§ 78u–4(b)(2) (emphasis added).

7. The Court notes other courts' differing interpretations of the legislative history. *Compare, e.g., In re Baesa Securities Litigation,* 969 F.Supp. at 242, with *Epstein v. Itron, Inc.,* 993 F.Supp. 1314, 1320–22 (E.D.Wash.1998). The analysis by Judge Whaley in *Epstein* is most persuasive and supports this Court's conclusion flowing from the statutory language.

vant, *see In re Silicon Graphics, Inc. Securities Litigation,* 970 F.Supp. 746, 757 (N.D.Cal.1997), and Plaintiffs have satisfied the more stringent burden by alleging knowledge, conscious action and recklessness. *See* Amended Complaint, ¶¶ 5, 12, 20–21, 27, 30–31, 36–37.

Further, the Court is unpersuaded at this stage by Defendants' argument that there is no probative evidence of scienter because Defendants' stock sales were made during the IPO and were not "suspicious." This argument seems to misperceive Plaintiffs' allegations as to motive and places undue reliance on Defendants' sales of OEDC stock. Plaintiffs articulate several theories in the Amended Complaint as to why Defendants made the alleged misrepresentations and thus sought to complete a $50 million IPO of OEDC stock at a favorable price. *See, e.g., id.* ¶ 5. Plaintiffs allege that the IPO of OEDC stock was designed to allow the controlling shareholder, defendant NGP, to "receive immediate payout of $12 million in loans" and "and to allow Defendants to avoid bearing the burden of OEDC's operating losses going forward." *Id.* ¶ 5; *see id.* ¶ 12(f).[8] Moreover, Plaintiffs do not rely on the sales as the only evidence of scienter. Plaintiffs allege that Defendants "knew" that many of the alleged misrepresentations were in fact false. *Id.* ¶¶ 12, 30, 36.

■ Plaintiffs have alleged facts supporting the reliance element of their securities fraud claim by alleging a fraud on the market. Amended Complaint, ¶ 45. As a result, they need not prove individual reliance. *Zuckerman,* 4 F.Supp.2d at 621.

■ To avoid dismissal for failure to allege causation, Plaintiffs need only allege "facts which show that Defendants' omissions and misrepresentations caused the market price of the stock to be artificially inflated, and therefore to appear to be a good risk for investment, so that when the truth came out about the company's condition, the stock lost value and Plaintiffs suffered a loss." *Zuckerman,* 4 F.Supp.2d at 626. Plaintiffs have

adequately alleged facts which, if proven, would establish the causation element of their claim. Amended Complaint, ¶¶ 2–6, 8, 10–12, 23–30, 32–34, 36, 42, 45. As noted by the judge in *Zuckerman,* "[w]hether Plaintiffs can prove their allegations of loss causation . . . is not an appropriate inquiry on a motion to dismiss." *Zuckerman,* 4 F.Supp.2d at 626.

**B. *Predictions and Forward–Looking Statements***

■ ***"Bespeaks Caution" Doctrine.***—A prediction may be actionable as a false statement of fact within the meaning of the securities laws if "(1) the speaker did not genuinely believe the statement was true; (2) there was no reasonable basis for the speaker to believe the statement; and (3) the speaker was aware of an undisclosed fact tending seriously to undermine the accuracy of the statement." *In re Browning–Ferris Industries Inc. Securities Litigation,* 876 F.Supp. 870, 878 (S.D.Tex.1995), citing *Rubinstein v. Collins,* 20 F.3d 160, 166 (5th Cir.1994). "Under the 'bespeaks caution' doctrine, if a defendant adds a cautionary statement to the predictive statement, then the statements may not be actionable as a matter of law." *Zuckerman,* 4 F.Supp.2d at 624, citing *Rubinstein,* 20 F.3d at 166–67.

The cautionary language used in OEDC's securities filings during the class period stated that "[e]xploration and development of natural gas and oil involve a high degree of risk that no commercial production will be obtained or that the production will be insufficient to recover drilling and completion costs" and that "[n]o assurances may be given that the Company will be profitable in the future." Defendants argue that this language satisfies the "bespeaks caution" doctrine and, as a result, the statements are not actionable as a matter of law.

Plaintiffs respond that cautionary language cannot insulate from liability false statements of present fact, citing *Huddleston v. Herman & MacLean,* 640 F.2d 534, 543 (5th Cir.1981),

---

8. In addition, Plaintiffs allege that the IPO was designed "to allow NGP to obtain an additional $2 million via the sale of shares in the Offering," "to allow other Defendants to sell $1.4 million worth of their stock," and "to create a liquid trading market for the Defendants' remaining holdings of more than 3.5 million OEDC shares." *Id.* ¶ 5.

aff'd in part and rev'd in part, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1122–23 (10th Cir.1997); *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1213 (1st Cir.1996); and *Gray v. First Winthrop Corp.,* 82 F.3d 877, 883 (9th Cir.1996). Plaintiffs in their Amended Complaint allege that Defendants already knew at the time the "projections" were made that OEDC was experiencing serious business difficulties, and made production and revenue forecasts which Defendants knew were not reasonably supported by known facts. Amended Complaint, ¶¶ 23, 24, 27–29, 32–35. "Because several of the allegedly misleading statements referred to then-present factual conditions, or implied background factual assumptions a reasonable investor would regard the speaker as believing to be true, the 'bespeaks caution' doctrine would be of no assistance to defendants as to those statements." *Grossman,* 120 F.3d at 1123.

■ "Only if a disclosure was 'so obvious that reasonable minds could not differ' can the issue of whether shareholders have been adequately cautioned about the risks be settled as a matter of law. Moreover, inclusion of some cautionary language in a company's disclosures is 'not enough to support a determination as a matter of law that defendant's statements were not misleading.'" *Warshaw v. Xoma Corp.,* 74 F.3d 955, 959 (9th Cir.1996) (citations omitted); *accord In re Syntex Corp. Securities Litigation,* 95 F.3d 922, 926 (9th Cir.1996).

■ Plaintiffs' allegations are sufficient to avoid dismissal of the Amended Complaint based on the "bespeaks caution" doctrine.

■ *PSLRA "Safe–Harbor" Provision.*—The PSLRA contains a "safe-harbor" provision which protects forward-looking statements which are clearly identified as such and which are accompanied by cautionary language. 15 U.S.C. § 78u–5(a). Defendants argue that OEDC's press releases of March 4, 1997, and April 1, 1997, fall within this "safe-harbor."

Plaintiffs first correctly respond that the April 1 press release is not identified as "forward-looking" and, therefore, does not

qualify for "safe-harbor" protection under the PSLRA. *See* 15 U.S.C. § 78u–5(c)(2)(A)(i). As to the statements made in the March 4 press release, Plaintiffs argue that they are not forward-looking. The statements that Plaintiffs allege are false are statements of present fact, such as that OEDC "has successfully completed 7 of 8 Viosca Knoll wells it has drilled in recent months" and that "other Viosca Knoll developments are presently progressing on the original construction schedule." Amended Complaint, ¶ 33. Plaintiffs' factual allegations are sufficient at this stage to avoid dismissal based on the PSLRA's "safe-harbor" provision.

**C.** *Analyst–Statement Allegations*

■ Defendants argue that challenged statements which were made by third-party securities analysts cannot provide the basis for imposing liability against Defendants under Section 10(b). Plaintiffs' allegations, however, are that Defendants Strassner and Kiesewetter communicated the false statements directly to the analysts to use them as conduits to the securities market. Amended Complaint, ¶ 28–29, 32, 34. "[C]orporate defendants may be directly liable under 10b–5 for providing false or misleading information to third-party securities analysts." *Cooper v. Pickett,* 137 F.3d 616, 624 (9th Cir.1997). Securities fraud defendants "cannot escape liability simply because [they] carried out [the] alleged fraud through the public statements of third parties." *Warshaw,* 74 F.3d at 959. Defendants' motion to dismiss the "Analyst–Statement" allegations is denied.

**D.** *Section 20(a) Claim*

Defendants argue that Plaintiffs have failed to allege control person liability against Defendants Strassner, Kiesewetter, Albin and NGP. Plaintiffs have alleged that the individual defendants had actual power or influence over OEDC and the ability to control corporate policy. Amended Complaint, ¶¶ 5, 17–19. Plaintiffs allege that NGP had the ability to exercise influence over OEDC through Albin. Amended Complaint, ¶ 47. These allegations satisfy Plaintiffs' pleading requirements under Section

20(a) of the Act. *See Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619–20 (5th Cir.1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994); *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir.1990); *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir.1981).

Defendants also argue that there can be no liability under Section 20(a) unless there is liability under Section 10(b). As discussed above, Plaintiffs have satisfied the pleading requirements imposed by Rule 9(b) and the PSLRA for their claim of primary liability under Section 10(b). As a result, dismissal of the Section 20(a) claim is inappropriate. *See Zuckerman*, 4 F.Supp.2d at 627–28.

## IV. *CONCLUSION AND ORDER*

Plaintiffs have alleged facts which satisfy their burden under Rule 9(b) and the PSLRA. As a result, dismissal of the Amended Complaint is not warranted. It is

**ORDERED** that Defendants' Motion to Dismiss [Doc. # 18] is **DENIED.** Defendants are directed to answer the Amended Complaint within twenty (20) calendar days of entry of this Order.