**Marlin Todd LANGTON, Plaintiff,**

v.

**CBEYOND COMMUNICATION, L.L.C., Defendant.**

**No. 2:03–CV–121.**

United States District Court, E.D. Texas, Marshall Division.

Sept. 18, 2003.

Rowe Jack Ayres, Jr., Addison, TX, for plaintiff.

Lisa A. Dreishmire, Bracewell & Patterson, LLP, Dallas, TX, for defendant.

## MEMORANDUM ORDER AND OPINION

DAVIS, District Judge.

Defendant Cbeyond Communications, L.L.C. ("Cbeyond") has filed a motion to either dismiss Plaintiff Marlin Todd Langton's ("Langton") claims, or transfer venue (Docket # 3). Cbeyond asks the Court to dismiss, under Federal Rule of Civil Procedure 12(b)(6), Langton's claims for fraudulent inducement to contract, negligence, tortious interference, business disparagement, and libel and slander. Furthermore, Cbeyond seeks to dismiss or transfer any remaining claims to the Northern District of Texas on grounds that the Eastern District is an improper venue or, alternatively, for convenience of the parties and witnesses. The Court **GRANTS** Cbeyond's motion to dismiss Langton's claim for fraudulent inducement and **DENIES** Cbeyond's remaining motions.

## BACKGROUND

This action stems from Langton's time as a Cbeyond salesman. Cbeyond is a competitive local exchange carrier of telecommunications services that targets small businesses. Langton was one of many salespersons in Cbeyond's employ. Cbeyond has only two offices in Texas, one in Dallas and another in Ft. Worth. Although Langton worked out of the Dallas office, approximately one third of his time was spent with customers in the Eastern District of Texas. Cbeyond allegedly targeted businesses in the Eastern District of Texas and encouraged its salespeople to visit up to 50 businesses a day whenever they worked in the Eastern District. In fact, up to 7% of Cbeyond's Texas business comes from customers in the Eastern District.

Langton worked as a salesman for Cbeyond for only two months. During that time, Langton and Cbeyond had a falling out, and Langton sought other employment. Ionex, a company in a similar line of business as Cbeyond, offered Langton a job. Langton accepted the position and resigned from Cbeyond. Langton alleges that after he resigned, Cbeyond disparaged his reputation and character to his new employer and customers. This lawsuit arises out of Cbeyond's alleged conduct after Langton resigned.

## MOTION TO DISMISS

*Fraudulent Inducement to Contract*

■ Cbeyond contends that Langton has not sufficiently pled his claim for fraudulent inducement to contract under Federal Rule of Civil Procedure 9(b). Rule 9(b) applies to all fraud claims, including fraudulent inducement to contract. Fed.R.Civ.P. 9(b); *Window Headquarters, Inc. v. MAI Basic Four, Inc.,* 1994 WL 673519, *5 (S.D.N.Y.1994); *Croce v. Hirsch,* 1990 WL 29362, *1 (S.D.N.Y.1990). Rule 9(b) requires parties to state the circumstances constituting fraud or mistake "with particularity," but allows them

to plead the mens rea generally. FED. R.CIV.P. 9(b). Simply put, a party must plead "the who, what, when, and where" to state a claim for fraud. *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 178 (5th Cir.1997). However, courts are to read 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence upon simple, concise, and direct allegations. *Id.* Thus, "while 9(b) stands as an exception to an overarching policy of immediate access to discovery, it [does] not reflect a subscription to fact pleading." *Id.*

 Langton's pleadings fall short of 9(b)'s heightened pleading requirement. Langton's Complaint states "Plaintiff would show that Defendant knowingly or recklessly made statements and representations to the Plaintiff that were both material and false, with the intent that the Plaintiff act upon these representations." (P's Comp. ¶ 23.) Langton's Complaint does not specify what statements were made, when the statements were made, or where the statements were made. Similarly, the plaintiffs in *Williams* sold their company based on the defendant's misrepresentations. *Id.* Although the plaintiffs had specifically identified the people who made and received the misrepresentations, the *Williams* court found the pleadings deficient because the plaintiffs did not state a time or place that the representations were made. *Id.* Here, Langton has not specified the what, when, nor where of the fraudulent inducement, and thus has failed to meet his pleading obligation. Accordingly, the court **GRANTS** Cbeyond's motion and dismisses Langton's fraudulent inducement claim without prejudice.

*Negligence*

 Although Langton's pleadings leave much to be desired, the Court will not dismiss under 12(b)(6). Dismissal under 12(b)(6) is only appropriate if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In this case, Langton's Complaint sets forth the basic facts leading up to the dispute, but gives no indication of how Cbeyond has been negligent. Although the pleadings are vague, the court cannot say with certainty that Langton can prove no set of facts that would permit recovery. Had Langton previously failed to comply with an Order for a More Definite Statement, the Court might be willing to grant Cbeyond relief under 12(b)(6). However, that is not this case's procedural posture, and the Court denies Cbeyond's motion to dismiss under 12(b)(6), at this time.

*Tortious Interference with Prospective Contracts and Economic Interest*

Langton's pleadings regarding his tortious interference claim, like his negligence claim, leave much to be desired. However, as with the negligence claim, the Court is not convinced that Langton can plead no set of facts that would permit recovery. Had Langton previously failed to comply with an Order for a More Definite Statement, the Court might be willing to grant Cbeyond relief under 12(b)(6). However, that is not this case's procedural posture, and the Court denies Cbeyond's motion to dismiss under 12(b)(6), at this time.

*Business Disparagement*

The Court will not dismiss this claim under 12(b)(6) for the same reasons as Langton's Negligence and Tortious Interference claims.

*Libel or Slander*

The Court will not dismiss this claim under 12(b)(6) for the same reasons as Langton's Negligence and Tortious Interference claims.

## MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER TO THE NORTHERN DISTRICT OF TEXAS

Cbeyond argues that the Court should dismiss Langton's Complaint under FED. R.CIV.P. 12(b)(3) because venue is not proper in the Eastern District. Alternatively, Cbeyond argues that the Court should transfer venue to the Northern District of Texas for the parties' and witnesses' convenience. The Court addresses each argument in turn.

*Is Venue Proper in the Eastern District?*

■ Federal Rule 12(b)(3) allows defendants to move for dismissal based on improper venue. FED.R.CIV.P. 12(b)(3); *Bigham v. Envirocare of Utah, Inc.*, 123 F.Supp.2d 1046, 1047–48 (S.D.Tex.2000). Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff. *Laserdynamics Inc. v. Acer America Corp.*, 209 F.R.D. 388, 390 (S.D.Tex.2002); *Bigham*, 123 F.Supp.2d at 1048. If there is no evidentiary hearing, a plaintiff may carry its burden by presenting facts, taken as true, that establish venue. *Laserdynamics, Inc.*, 209 F.R.D. at 390. Courts will accept uncontroverted facts in a plaintiff's pleadings as true, and will resolve any conflicts in the plaintiff's favor. *Id.*

■ Langton's assertion of venue under 28 U.S.C. § 1391(a)(1) requires the Court to determine whether Cbeyond would be subject to personal jurisdiction in the Eastern District of Texas, were the Eastern District a separate state. Section 1391 provides in relevant part "a civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(a)(1). Section 1391 further declares "in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c). The parties do not dispute that jurisdiction is properly based on diversity of citizenship nor that Cbeyond was subject to personal jurisdiction in Texas when this action was commenced. Thus, the only question before the Court is whether Cbeyond "resides" in the Eastern District of Texas under § 1391(c).

■ In Texas, a nonresident defendant is subject to personal jurisdiction if it has "minimum contacts" with the forum and if exercise of jurisdiction over the nonresident does not offend "traditional notions of fair play and substantial justice." *See Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994). The Court is not constrained by state law jurisdictional issues because the Texas long-arm statute is coextensive with the United States Constitution. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir.2000). Contacts sufficient to assert specific jurisdiction or general jurisdiction constitute sufficient "minimum contacts." *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir.2003). "When a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "General jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and 'continuous and systematic' but unrelated to the instant cause of action." *Id.*

(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Additionally, to establish general jurisdiction, the continuous and systematic activities must be substantial enough "in toto" to justify asserting jurisdiction over a defendant for causes of action unrelated to those activities. *See Central Freight Lines, Inc.,* 322 F.3d at 381.

According to the uncontroverted allegations in Langton's pleadings, Cbeyond does business, unrelated to the instant cause of action, in the Eastern District. Langton alleges that Cbeyond continuously directs its salespeople into the Eastern District. According to Langton, Cbeyond directed salespersons to visit and solicit "at least fifty separate businesses in the Eastern District each day [they] ventured into the area." Plaintiff contends that, although Southwestern Bell dominates markets in the Eastern District, Cbeyond's aggressive sales tactics in the Eastern District have allowed it to gain a substantial market share. Indeed, Plaintiff alleges that up to 7% of Cbeyond's Texas business comes from customers in the Eastern District.

Cbeyond's aggressive sales tactics and market share in the Eastern District establish general jurisdiction and thus venue. Conducting business in a forum, regularly directing salespersons into a forum, and soliciting business in a forum are continuous and systematic activities that support general jurisdiction. *Soma Medical Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295–96 (10th Cir.1999) (listing factors relevant to general jurisdiction). Additionally, the fact that 7% of Cbeyond's

Texas business comes from the Eastern District establishes that Cbeyond's contacts are "in toto" significant enough for general jurisdiction. Viewing the facts and uncontroverted allegations in light most favorable to Langton, the Court finds that Cbeyond is generally present in the Eastern District. *Laserdynamics, Inc.,* 209 F.R.D. at 390. Because Cbeyond would be subject to general jurisdiction in the Eastern District, were it a separate state, venue is proper in the Eastern District.[1]

*Should the Court Transfer to the Northern District for Parties' and Witness' Convenience?*

■■■ Cbeyond further argues that the Court should transfer this case from the Eastern District's Marshall Division to the Northern District's Dallas Division. Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses ... a district court may transfer any civil action to any other district or division where it might have been brought." The decision to transfer a case is within the district court's discretion. *Barton v. Young,* 144 F.Supp.2d 685, 685 (E.D.Tex.2001) (citing *Peteet v. Dow Chemical,* 868 F.2d 1428, 1436 (5th Cir.1989)). In considering a motion to transfer venue, courts weigh factors relating to (1) the litigants' convenience and (2) the public interest in the fair and efficient administration of justice. *Mohamed v. Mazda Motor Corp.,* 90 F.Supp.2d 757, 771 (E.D.Tex.2000). The movant must demonstrate that the balance of convenience and justice *substantially* weigh in favor of transfer. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (stating "unless the

---

1. Cbeyond's Reply to Langton's Response to the Motion for Summary Judgment is the first document to discuss the "fair play and substantial justice" factors. The Court need not decide whether Cbeyond may properly raise that argument in its Reply Brief because, for reasons stated in this opinion regarding Cbeyond's Motion to Transfer Venue, the Court finds that proceeding in the Eastern District does not offend traditional notions of fair play and substantial justice.

balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"); *See Mohamed*, 90 F.Supp.2d at 769. The convenience factors are: (1) plaintiff's choice of forum, (2) the convenience of the parties and material witnesses, (3) the place of the alleged wrong, (4) the location of counsel, (5) the cost of obtaining witnesses' attendance and the availability of compulsory process, (6) the accessibility and location of sources of proof, and (7) the possibility of delay and prejudice if transfer is granted. *Mohamed*, 90 F.Supp.2d at 771. The public interest factors are: (8) the administrative difficulties caused by court congestion, (9) the local interest in adjudicating local disputes, (10) the unfairness of burdening citizens in an unrelated forum with jury duty, and (11) the avoidance of unnecessary problems in conflict of laws. *Id.*

### 1. *Plaintiff's choice of forum.*

 Langton's choice of forum supports retaining this case in the Eastern District of Texas. Plaintiff's choice of forum, while not decisive, is an important venue factor. *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839. Langton chose to file his Complaint in the Eastern District of Texas, and the Court gives that choice due consideration.

### 2. *Convenience of parties and material witnesses.*

This factor does not support transferring the case to Dallas. Cbeyond identifies four party witnesses that reside in Dallas and two non-party witnesses that reside in Austin and Atlanta. Although the parties have put much thought and effort into calculating exact distances that potential witnesses may travel, the Court does not find that any of the distances are overly burdensome. The Fifth Circuit has held that travel from Houston to Tyler was not burdensome on witnesses. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988). Further, other courts have noted that advances in transportation and communication technologies make travel of distances relevant to this case negligible. *Mohamed*, 90 F.Supp.2d at 776. Moreover, it is worth noting that Marshall has an airport almost as easily accessible as Dallas. *Id.* at n. 23 (taking judicial notice that the Shreveport, Louisiana airport is 30 miles from Marshall, Texas and that the DFW airport is at least 20 miles from downtown Dallas, Texas). In light of the pleadings and precedent, the Court cannot say that this factor favors transfer to Dallas.

### 3. *Place of the alleged wrong.*

The Court cannot say that the place of the alleged wrong supports transferring the case to Dallas because the court cannot tell where the alleged wrong occurred. Cbeyond correctly points out in its brief that Langton does not state where the alleged tort took place. However, Cbeyond also does not give the court any indication where the alleged wrong occurred. Cbeyond asks the Court to conclude that any libelous statements would have been made in Dallas, where it hired Langton. However, as noted above, Langton and Cbeyond both conduct substantial business in the Eastern District. The basis of Langton's claims is that Cbeyond made slanderous statements to his new business contacts. Thus, it is equally likely that the alleged tort occurred in the Eastern District. Without more specific allegations, the Court cannot assume that the alleged tort did or did not occur in the Eastern District.

### 4. *Location of Counsel.*

The location of counsel does not support transferring the case to Dallas. In this case, Langton's counsel is in the Eastern District and Cbeyond's council is in the Northern District. As discussed above, travel to Marshall is not objectively burdensome. If Cbeyond's counsel subjectively feels overly burdened, then Cbeyond is free to find

alternate counsel in the Eastern District. Even if this factor were to support transferring this case to Dallas, courts give this factor little weight. *Robertson v. Kiamichi Railroad Co.*, 42 F.Supp.2d 651, 658 (E.D.Tex.1999).

5. *Cost of obtaining witnesses' attendance and availability of compulsory process.* Accessibility of proof and compulsory process do not support transferring the case. First, there is no difference between Marshall and Dallas regarding the availability of compulsory process. The parties may compel any witness who resides in Texas to attend trial, regardless of what Texas district court tries the case. FED. R.CIV.P. 45; *Mohamed*, 90 F.Supp.2d at 778. Additionally, transferring the case from Marshall to Dallas would not solve any problems the parties may have compelling out of state witnesses' attendance. Second, the cost of attaining witness' attendance is not sufficiently greater in Marshall than in Dallas. Marshall is not so far from Dallas as to require overnight accommodations. Furthermore, as noted above, travel to Marshall is not so far as to be burdensome. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). Therefore, the Court cannot say that this factor favors transfer.

6. *The accessability and location of sources of proof.* Additionally, accessability of proof is not burdensome in Marshall. As noted above, courts do not consider travel from Dallas to Marshall burdensome. *Id.* Further, with new developments in communication and document storage, the fact that some documents may be in Dallas is not problematic for a Marshall trial. *Mohamed*, 90 F.Supp.2d at 778. Indeed, the Court cannot be certain where the alleged tort occurred, and thus the main sources of proof may well be located in the Eastern District.

7. *The possibility of delay and prejudice if transfer is granted.* The possibility of delay supports keeping the case in the Eastern District. Cbeyond claims that Exhibit A to its Motion to Transfer Venue establishes that cases in the Northern District have a shorter time from filing to disposition than cases in the Eastern District (6.6 months in the Northern District versus 15 months in the Eastern District). However, those figures reflect average times for the entire Northern and Eastern Districts. They do not necessarily reflect the average times in the Dallas and Marshall divisions. Furthermore, those figures do not reflect the time from filing to trial. Exhibit A indicates that the time period from filing to trial is actually greater in the Northern District than in the Eastern District (18.7 months versus 14 months). Thus, Cbeyond's Exhibit A is either too vague to consider or actually supports retaining the case.

8. *The administrative difficulties caused by court congestion.* Cbeyond has not presented any evidence to establish that this factor weighs in favor of transfer. Cbeyond merely claims "there is no evidence that the Dallas or Sherman Courts are more congested than this court." Although that assertion is possibly true, Cbeyond presents no evidence that the Dallas and Sherman Courts are equally or less congested. Thus, the Court finds that this element supports neither retaining nor transferring this case.

9. *The local interest in adjudicating local disputes.* The Eastern District does have an interest in adjudicating this case. The Court has already concluded that Cbeyond is generally present in the Eastern District and that the tortious conduct may have occurred in the Eastern District. The Court has an interest in reviewing the conduct of businesses that operate and have allegedly committed torts in the Eastern District.

10. *The unfairness of burdening citizens in an unrelated forum with jury duty.* This suit is related to the Eastern District. As noted above, Cbeyond is generally present and may have committed a tort in the Eastern District. Thus, it is not overly burdensome to the citizens to sit on jury duty.

11. *The avoidance of unnecessary problems in conflict of laws.* There can be no conflict of laws between the Northern and Eastern Districts of Texas, so this factor does not weigh in favor of transfer.

In sum, Cbeyond has not met its burden of proving that the Court should transfer this case to the Northern District. None of the factors discussed above support transferring the case to the Dallas Division. Based on the pleadings before the Court, Cbeyond is generally present in the Eastern District and tortious conduct may have occurred in the Eastern District. Furthermore, a drive from Dallas to Marshall is not sufficiently burdensome on the parties or witnesses to require transfer. Marshall is not a remote part of the Untied States. Therefore, regardless of how much weight the Court places on Langton's forum choice, it cannot say that transfer is warranted.

*Should the Court Transfer to the Sherman Division for the Parties' and Witnesses' Convenience?*

The analysis from above generally applies to the motion to transfer venue to the Sherman Division because the analysis for an inter-district transfer under 1404(a) is the same as for an inter-divisional transfer. *Mohamed,* 90 F.Supp.2d at 768. Rather than addressing all 11 plus elements again, the Court simply notes that any arguments that may have existed for transferring the case to Dallas have even less weight when considering a transfer to Sherman. Thus, the Court will not transfer the case to Sherman.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Cbeyond's motion to dismiss Langton's fraudulent inducement claim and orders it dismissed without prejudice. The Court **DENIES** Cbeyond's remaining motions.

**IT IS SO ORDERED.**