Dan B. LAIN, Trustee of the Search Liquidating Trust, Plaintiff,

v.

George EVANS, Glen Adams, Richard R. Bonini, William T. Bush, Frederick S. Hammer, Luther H. Hodges, Jr., James F. Leary, A. Brean Murray, Douglas W. Powell, Barry W. Ridings, and James B. Stuart, Jr., Defendants.

No. CIV. 3:99CV2594H.

United States District Court, N.D. Texas, Dallas Division.

June 30, 2000.

Frank Jennings Wright of Burke Wright & Keiffer, Dallas, TX, for the plaintiff.

Lawrence E. Ackels, Jr., of Ackels & Ackels, Dallas, TX, for defendants George Evans.

Charles S Kramer of Riezman Berger, St. Louis, MO, for Glen Adams, Richard R. Bonini, Frederick S. Hammer.

Lawrence E. Ackels, Jr., Ackels & Ackels, Dallas, TX, charles S. Kramer, Riezman Berger, St. Louis, MO, for Luther H. Hodges, Jr, James F. Leary, Brean Murray, Douglas W. Powell, Barry W. Ridings, James Stuart, Jr., and William H.T. Bush.

## *MEMORANDUM OPINION AND ORDER*

SANDERS, Senior District Judge.

Before the Court are Defendants' Motion to Dismiss Amended Complaint, filed February 4, 2000, and all responses and replies thereto. Upon careful consideration of the arguments and authorities of the parties, the Court finds that Defendants' motion is meritorious. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** Plaintiff's feder-

al claims under Section 10(b) and Rule 10b–5. The Court declines to exercise jurisdiction over the remaining pendent state claims.

## I. BACKGROUND

Plaintiff Dan Lain, a trustee confirmed by the Bankruptcy Court, brings this suit on behalf of the beneficiaries of the Search Liquidating Trust—the former shareholders and creditors of Search Financial Services, Inc. ("Search"). Plaintiff sues for violations of Section 10(b) of the Securities and Exchange Act of 1934 [1] and Securities and Exchange Commission Rule 10b–5 [2] Plaintiff further alleges five state law causes of action: common law fraud, intentional misrepresentation, negligent misrepresentation, breach of the fiduciary duty of care, and breach of the fiduciary duty of loyalty. Defendants are former directors of Search Financial Services, Inc., a publicly held financial services corporation that purchased and managed subprime motor vehicle receivables (or, more colloquially, loans from car buyers with bad credit) Defendants served as directors of Search for various terms between 1995 through the end of 1998. The First Amended Complaint ("Complaint") protests the acquisition by these Search directors of MS Financial, Inc., a "troubled company" in the same industry as Search. Plaintiff alleges that the acquisition of MS Financial, despite indices of its failing financial health, was corporate misgovernance.

---

1. Codified at 15 U.S.C. § 78j (b). Section 10(b) provides in relevant part: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. Codified at 17 C.F.R. § 240.10b–5. Rule 10b–5 provides that: "It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made not misleading, or (c) To engage in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

Plaintiff further contends that Defendants hid the risks of the MS Financial acquisition from its shareholders and creditors (represented by Plaintiff), and in press releases and public documents materially misrepresented details of the acquisition that amounted to federal securities fraud. Specifically, according to the Complaint, Defendants failed to disclose the dwindling assets of Search and MS Financial in press releases on October 25, 1996, February 7 and 21, 1997, May 1, 1997 and August 12, 1997; a form 8–K filed with the SEC on July 31, 1997; and a form 10–Q filed with the SEC August 14, 1997. The Court will consider each of these alleged misrepresentations below.

In addition to the federal securities claim, the lengthy Complaint lists a litany of misconduct by the board of Search According to Plaintiff the Defendants defrauded one of their major creditors by signing a note they would be unable to pay, increased their own compensation despite financial problems, attempted to transfer assets to favored creditors before bankruptcy, and committed various misdeeds during the bankruptcy procedures in this district.

Defendants now move to dismiss the Section 10(b) and Rule 10b–5 claims for failure to stare a claim under Rule 12(b)(6) and failure to plead fraud with particularity under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").[3]

## II. ANALYSIS

The Complaint's narrative paints a broad picture of corporate misgovernance, poor decision making, and misdealing by Defendants that ran Search into bankruptcy. However, the portions of the Complaint that specifically address securities fraud are a mere handful of paragraphs sprinkled through the lengthy Complaint. The remainder of the pleading discusses internal correspondence between Defendants that relates to their fiduciary

breaches, or allegations of misconduct in bankruptcy procedures. A review of the few securities fraud allegations show that they fail to state an actionable claim under Section 10(b) or Rule 10b–5 upon which relief can be granted under Rule 12(b)(6), and that they fail to meet the heightened pleading standard set forth in Rule 9(b) and the PSLRA.

### A. Scienter

The PSLRA increases the burden on plaintiffs in a securities fraud action of pleading scienter. Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The PSLRA requires that a plaintiff pleading a securities fraud action must, with respect to each fraudulent act or omission, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4 (b)(2). When a complaint fails to plead scienter in conformity with the PSLRA, dismissal is mandatory. *See* 15 U.S.C. § 78u–4 (b)(3)(A), *Coates v. Heartland Wireless Communications,* 55 F.Supp.2d 628, 634 (N.D.Tex.1999).

Further, because Section 10(b) claims are based in fraud, they must also satisfy the pleading requirements of FED. R. CIV. P. 9(b). *See Melder v. Morris,* 27 F.3d 1097, 1100 (5th Cir.1994) Like the PSLRA, Rule 9(b) requires that, in fraud cases, plaintiff plead specific facts that give rise to an inference of fraudulent intent. *See Lovelace v. Software Spectrum,* 78 F.3d 1015, 1018 (5th Cir.1996).

■ The Complaint charges all of the Defendants with knowledge of the press releases and SEC documents identified above. With respect to Defendants' fraudulent intent in releasing these statements, Plaintiff's scienter allegation states "upon information and belief, press releases and

---

**3.** Defendants also contend that the securities fraud claim is barred by the statute of limita-

tions. The Court does not address this argument

other similar types of public statements were often, if not routinely circulated among Board members... Thus, the Defendants .. are properly charged with knowledge and responsibility for the representations made therein." (Comp.P24, n. 8).

■ This allegation fails to satisfy the pleading requirements of the PSLRA First, the PSLRA states that "if an allegation regarding [a] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4 (b)(1). Plaintiff does not state the facts upon which the "information and belief" is formed as required by law Although under the group pleading doctrine, this allegation may be sufficient to show Defendants' knowledge of the statements, see *Zuckerman v. Foxmeyer Health Corp.*, 4 F.Supp.2d 618, 622 (N.D.Tex.1998), as discussed below, there are few facts that show Defendants' knowledge of the *falsity* of the statements. The scienter element of a securities fraud claim requires that Defendants made a statement "knowing of its falsity and intending that the plaintiff rely on it ...." *Oppenheimer v. Prudential Securities Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). Plaintiff fails to identify facts that show that Defendants had knowledge of the false or misleading nature of the statements, and intended potential investors to rely on the statements.

■ The Court will now examine each statement that allegedly contains a materially false or misleading statement. Although Plaintiff criticizes this "piecemeal" approach to evaluation of its allegations of fraud, under the relevant pleading standards, the Court must sharply scrutinize the sole claim on which it bases jurisdiction—the securities fraud claim. The PSLRA does not permit the Court to look at the broad picture to determine if Plaintiff has properly plead its claim. *See Harris v. Ivax Corp.*, 182 F.3d 799, 804 (11th Cir.1999) (reasoning that PSLRA's requirement of scrutiny of statements "speci-

fied" in complaint implies piecemeal examination of individual statements).

**B. Press Releases**

■ The statements in the October 25, 1996, November 5, 1996 and August 12, 1997 press releases are of the vague and optimistic type that cannot support a securities fraud action, *see, e.g., McNamara v. Bre–X Minerals Ltd.*, 57 F.Supp.2d 396, 414 (E.D.Tex.1999), and contain no concrete factual or material misrepresentation. (Comp.PP24, 26, 59). As an example, one press release states that "we look forward to higher revenues and loan volume for the remainder of fiscal 1998" (Comp.P59). Another states that Search has "aggressive growth plans...to become a major player." (Comp.P24). These statements, even considered in the light most favorable to Plaintiff, fail to state a claim for securities fraud as a matter of law.

■ Further on in the Complaint, Plaintiff identifies two press releases from Defendants dated February 7 and 21, 1997 discussing the acquisition of MS Financial and the industry in general. The February 7 press release states "...realization of additional revenues from the MS Financial Portfolio, combined with the consolidation or elimination of duplicate operating and administrative expenses, should sharply increase Search's earnings...." (Comp. P40). The February 21 press release states "although the non-prime auto finance sector is presently in a state of turmoil, Search is positively positioned in the non-prime auto finance arena with its veteran consumer finance management team, solid balance sheet, and highly effective decentralized servicing/collection operations." (Comp.P42.)

The Complaint fails to explain how these statements were false and misleading to potential investors, instead proposing in a conclusory manner that the statements were "false and misleading when made." As part of the heightened pleading burden

required for securities fraud, Plaintiffs must explain the reason or reasons why the statements were fraudulent. *See* 15 U.S.C. § 78u–4 (b)(1)(emphasis added). Plaintiff fails to tell us: Did the Search officers not plan to consolidate or eliminate operating expenses? Would the acquisition of MS Financial's portfolio realize no additional revenues? Was Search's management team inept, or its servicing operations not centralized? Although it is clear that Plaintiff disagrees with Defendants' strategic business decision to increase Search's expansion, Plaintiff fails to explain how the statements regarding those business decisions were materially misleading.[4]

The next public statement that Plaintiff contends constitutes securities fraud is a press release dated May 1, 1997 in which the Board announced the signing of a letter of intent with Lehman Brothers Holding for a $ 100 million letter of credit. (Comp P51) Plaintiff does not allege that this press release is false, but rather "questions the propriety" of announcing a mere letter of intent, and contends that the statement was "misleading when made in light of the circumstances in which it is made." (Comp.P51). No explanation is given of what "circumstances" make the statement misleading, contrary to the PSLRA's requirement that Plaintiff plead the reasons why a statement is fraudulent. Again, Plaintiff has failed to meet the burden imposed by the PSLRA. In general, it appears the Complaint contests Defendants' misguided corporate strategy rather than showing their intentional deception of the public.

In summary, the press releases identified by Plaintiff are not actionable as a matter of law, or are plead with insufficient particularity to satisfy the PSLRA.

## C. SEC Filings

In addition to the press releases, Plaintiff complains Defendants made material misrepresentations regarding the financial condition of MS Financial, the company acquired by Search, in public documents filed with the SEC. Specifically, Plaintiffs complains about a Form 8–K filed with the SEC on July 31, 1997, and a Form 10–Q filed on August 14, 1997.

The Form 8–K filed by Defendants stated that "as of March 31, 1997, [MS Financial] had total assets of approximately $ 91,000,000 ...." (Comp.P57). Two weeks later, Defendants filed the Form 10–Q which stated that "as of July 31, 1997, [MS Financial] had total assets of approximately $ 75,000,000.." (Comp.P60). Plaintiff contends that, when taken in context with the second statement, the first filing representing the assets of MS Financial as $ 91,000,000 was misleading. Plaintiff contends that Defendants must have known when filing the Form 8–K on July 31 that MS Financial was losing money, and that the statements included therein were misleading because they did not disclose the deteriorating financial condition of MS Financial, as evidenced by a drop in assets of $ 16 million over four months Plaintiff does not allege that the statements in the Forms 8–K and 10–Q were false or inaccurate.

As discussed above, Plaintiff must plead facts that give rise to a *strong inference* that Defendants acted with fraudulent intent in releasing the statements regarding MS Financial's worth. See *Coates,* 55 F.Supp.2d at 634–35 (emphasis in original)(citing *Maldonado v. Dominguez,* 137 F.3d 1, 9 (1st Cir.1998) for the proposition that the PSLRA requires specific facts that make it reasonable to believe that Defendant knew a statement was false or misleading). This Plaintiff fails to do. No facts are presented that show that Defen-

---

4. The Court also notes, without ruling upon this provision, that the statements in the February 7, 1997 press release were forward looking, and may fall under the safe harbor provision of the PSLRA for statements of future economic performance. *See* 15 U.S.C. § 78u–5 (c)(1).

dants knew that at the time of filing the 8–K on July 31 that MS Financial had lost significant assets between March 31 and July 31. Instead, Plaintiff alleges in a conclusory fashion that the statements in the 8–K "were known or must have been known to the Defendants to be inherently materially misleading at the time they were made." (Comp.P57). Although an allegation was made that Defendants knew of MS Financial's losses in late 1996, this allegation is insufficient to show that Defendants knew of further losses in mid–1997. Without specific, identifiable facts tending to show that the Defendants on the Board were aware that MS Financial's condition had deteriorated significantly before it made the statements on July 31 or August 14, Plaintiff has failed to allege fraudulent intent.

Plaintiff's failure to plead scienter sufficiently is illustrated by the paragraphs directly following the discussion of the SEC statements in the Complaint. Plaintiff alleges that on August 19, after both SEC filings had been made to the public, the Board discovered that MS Financial had lost $ 70 million in assets since their initial interest in The company (Comp P62). Plaintiff concedes that "only post-acquisition [after July 31] were the results and impact" of MS Financial's falling revenues discussed. (Comp.P62) Plaintiff cannot charge Defendants with intentionally misleading their investors about facts Defendants may have become aware of after making allegedly misleading statements to the public. See Coates, 55 F.Supp.2d at 635 (a plaintiff cannot allege "fraud by hindsight" by seizing on disclosures in later reports and alleging they should be made earlier). Thus, it appears the Complaint takes the untenable position that Defendant Evans misled other Board members regarding MS Financial's stability in internal memoranda, while at the same time charging the other board members with knowledge that MS Financial was fading.

Notably absent from the Complaint is any allegation that Defendants purchased or sold any stock around the time when the SEC statements were filed. Instead, the Complaint states that Defendants motive in committing securities fraud was to create the impression that Search was a stable, growing company (Comp.P23), to "keep the game going" and gloss over allegations of mismanagement (Comp PP25, 77) and to defend their personal interests. (Comp P70). The Fifth Circuit found very similar allegations regarding corporate officers' motive were insufficient to establish scienter in *Tuchman v. DSC Communications*, 14 F.3d 1061, 1068 (5th Cir.1994) (defendants' motive to (1) create an artificially inflated picture of company's financial condition, (2) maintain inflated price for stock and (3) preserve defendants' positions and compensation were insufficient to establish scienter)

The remaining allegations in the Complaint relate primarily to the state law claims of corporate misgovernance and breaches of fiduciary duty. The majority of the complaint tells of memorandums and telephone calls made between board members, and were not representations to public, shareholders or creditors about Search's value or stability These allegations regarding internal communications are an impermissible attempt to metamorphose a state law fiduciary claim into a Rule 10b–5 securities action. *See Santa Fe Industries Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). "Corporate mismanagement does not, standing alone, give rise to a 10b–5 claim." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1070 (5th Cir.1994)

### III. STATE LAW CLAIMS

Since the Court has dismissed the only claim over which it has original jurisdiction, no proceedings of substance have been conducted in this court, and the equities do not weigh in favor of retaining the state claims, the Court declines to exercise jurisdiction over the supplemental state

law claims. *See* 28 U.S.C § 1367 (c); *Rhyne v. Henderson County,* 973 F.2d 386, 395 (5th Cir.1992).

## IV. CONCLUSION

Defendants' Motion to Dismiss is **GRANTED.** Plaintiff's federal claims are **DISMISSED WITH PREJUDICE.** Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367 (c). Judgment will be entered accordingly.

SO ORDERED.